FLORENCE L. HINNANT v. TIDEWATER POWER COMPANY.

(Filed 31 January, 1925.)

1. Actions — Husband and Wife — Consortium — Death — Survival of Action—Statutes.

The death of W. T. H. was caused by the negligence of the defendant, and his personal representative brought suit and recovered damages for the intestate's wrongful death. Thereafter, F. L. H., wife of W. T. H., brought her individual action against the defendant to recover damages. The trial judge ·instructed the jury that damages might be awarded her as a fair compensation for her mental anguish and loss of consortium: *Held* to be error.

STACY, J., did not sit.

APPEAL by defendant from *Calvert, J.,* at April Term, 1924, of NEW HANOVER.

*E. K. Bryan for plaintiff.*
*Rountree & Carr for defendant.*

ADAMS, J. The defendant is a corporation operating an electric railroad between the city of Wilmington and Wrightsville Beach. On 25 August, 1920, the plaintiff's husband was one of its employees, serving in the capacity of motorman, and at 6:30, forenoon, in a collision of two of the defendant's cars on the trestle between Wrightsville Station and Wrightsville Beach, he suffered personal injuries which resulted in his death at 3 o'clock the next morning. Thereafter his personal representative brought suit against the defendant and recovered a judgment for damages, which has been paid. C. S., 160, 3465, 3466, 3467, 3468; 187 N. C., 288.

While that suit was pending, the plaintiff instituted the present action. She filed a complaint, minutely stating the defendant's alleged acts of negligence, the nature of her husband's injuries, the circumstances attending his death, and setting forth her individual grievance, as follows: "By reason of the negligence hereinbefore complained of, which resulted in the death of the plaintiff's husband, W. T. Hinnant, the plaintiff was caused to suffer great and serious nervous shock, seriously and permanently impairing and weakening her nervous system, causing her to suffer great pain and mental anguish over the loss of a devoted and true husband, and seeing him broken, mashed and bruised and suffering, and causing the plaintiff to have to devote her entire time in nursing, caring for, supporting, looking after, and administering to her three children, and causing her to have to maintain herself and family,

as the said W. T. Hinnant had no personal estate, and depriving the plaintiff of her husband's support and maintenance of herself and family, and of his society, love and affection, his counsel and advice, his tender ministration in sickness, and the many comforts and pleasures which the marital relationship brings to those who are congenial with each other, to the great damage and injury of the plaintiff," etc.

After the collision her husband was taken to the James Walker Hospital in Wilmington for treatment. She saw him there about midday, late in the afternoon and again at 9 o'clock in the evening. At the trial she described his condition, her sensation, and the circumstances under which she had been admitted to the hospital. Other witnesses also were examined.

Several exceptions were entered of record, but for the present purpose it is necessary to consider only one. On the question of damages the presiding judge instructed the jury as follows: "You will allow only such amount, if any, as you may find from the evidence, and by the greater weight of it, will be fair compensation for mental anguish and for loss of consortium—that is, the society and companionship of her husband, which she may have suffered from the time of the injury to the time of his death." The defendant excepted, not only to this instruction, but to the refusal of the court to tell the jury that the plaintiff was not entitled to damages for mental anguish or loss of consortium: The appeal presents the question whether these exceptions should be sustained.

In *Baker v. Bolton,* 1 Camp., 493, *Lord Ellenborough* said: "In a civil court, the death of a human being could not be complained of as an injury." Whatever the foundation on which this rule is made to rest—whether on the ground that a personal right of action dies with the person, or that the value of a human life may not become the subject of judicial computation, or that the relation of the parties is terminated by death—it is true, as stated in *Insurance Company v. Brame,* 95 U. S., 754, 24 Law Ed., 580: "The authorities are so numerous and so uniform to the proposition that, by the common law, no civil action lies for an injury which results in death, that it is impossible to speak of it as a proposition open to question. It has been decided in many cases in the English courts and in many of the State courts, and no deliberate, well considered decision to the contrary is to be found." Hilliard on Torts, 87, sec. 10; *Hatch v. R. R.,* 183 N. C., 617; *Mitchell v. Talley,* 182 N. C., 683; *Hood v. Telegraph Co.,* 162 N. C., 70; *Broadnax v. Broadnax,* 160 N. C., 432; *Bolick v. R. R.,* 138 N. C., 370; *Killian v. R. R.,* 128 N. C., 261. In accordance with this principle, it has been held that a widow has no individual right of action for the wrongful death of her

husband, and that a father has none for the wrongful death of his son. *Howell v. Comrs.,* 121 N. C., 363; *Killian v. R. R., supra; Hope v. Peterson,* 172 N. C., 869. But the doctrine that no civil action could be maintained at common law for causing the death of a human being does not imply that the act which causes the death may not, under some circumstances, give a right of action. It may, but it must be a right not springing from the death itself, as, for example, a suit by an employer or by a father against a wrongdoer who deprives the former of his employee's services and the latter of his son's. "Now, the same act," said *Judge Cooley,* "which deprives a master of the services of his laborer, or a father of those of his child, may result in the death of the servant or child. In these cases the common law gave a remedy for the loss, but only for the time intermediate the injury and the death." 1 Cooley on Torts, 547. Of course, under Lord Campbell's Act, and statutes enacted in pursuance thereof, the common law has been modified. Our statute provides that when the death of a person is caused by the wrongful act, neglect, or default of another, such as would, if the injured party had lived, have entitled him to an action for damages therefor, the person or corporation that would have been so liable, and the personal representative of such person, and the successors of such corporation, shall be liable to an action for damages. C. S., 160. It is by virtue of this provision that the administrator of the plaintiff's husband recovered damages for the intestate's wrongful death.

But this action is prosecuted by the plaintiff in her alleged individual right, and involves the clear-cut question whether, by reason of the injury inflicted upon her husband, she is entitled to damages for loss of consortium or mental anguish suffered by her during the period intermediate the injury and the death.

First, as to consortium. With respect to relative rights under the old English law, injuries that might be offered to a person, considered as a husband, were abduction, or taking away a man's wife; adultery, or criminal conversation with her; and beating or otherwise abusing her. In the first two instances the wrongful act destroyed the foundation of the marriage relation and included a direct and primary injury to the husband, for which he had a cause of action. 3 Bl., 139. So in part as to the wife under modern conditions. Whatever her former status may have been, the doctrine of marital equality now clothes her substantially with similar relative rights, from which it follows that for a direct and intentional invasion of the right of consortium, such as criminal conversation, alienation of affections, or the inhibited sale of narcotic drugs, an action now lies in favor of the husband or the wife.

*Holleman v. Harward,* 119 N. C., 150; *Brown v. Brown,* 124 N. C., 19; *Cottle v. Johnson,* 179 N. C., 426.

In reference to the third class of injuries, Blackstone says: "The third injury is that of beating a man's wife, or otherwise ill-using her; for which, if it be a common assault, battery, or imprisonment, the law gives the usual remedy to recover damages by action of trespass *vi et armis,* which must be brought in the names of the husband and wife jointly; but if the beating or other maltreatment be very enormous, so that thereby the husband is deprived for any time of the company and assistance of his wife, the law then gives him a separate remedy by an action of trespass, in nature of an action upon the case, for this ill-usage, *per quod consortium amisit;* in which he shall recover a satisfaction in damages."

This "separate remedy" for the wife's ill-usage, *per quod consortium amisit,* was the means by which the husband sought to recover damages for the loss of consortium arising from personal injury wrongfully inflicted on the wife. In its original application the term "consortium" was not confined to society, companionship, and conjugal affection. Service was a prominent, if not the predominant, factor; not so much the service which resulted in the performance of labor or the earning of wages as that which contributed aid and assistance in all the relations of domestic life. In *Marri v. Railroad,* 84 Conn., 9, in which there is a clear and comprehensive discussion of the question, it is said: "The law's conception of the claim which the husband had upon the wife, and of his right growing out of the marital relation which entered into the meaning of the word consortium to express that right as the subject of invasion by wrongdoing, was thus one which embraced the right to service as a distinct factor, and there was no attempt to disassociate the right to society, companionship and affection from it. All these rights were bound together in social and legal contemplation, and they were bound together in the law's expression of them. In some cases, as where the wrong was criminal conversation, the loss of conjugal society and affection might stand out and be emphasized as the preëminent and possibly sole basis of recovery. In others, as in actions growing out of personal injuries, the loss of service would present itself as the predominant factor. The law has, however, never been solicitous to distinguish between these different elements of damage, or to separate them, and there will be found few cases, indeed, and, we think, no one of the earlier ones, in which the husband's loss was regarded as one into which the element of service did not enter. The pleadings in the early cases, and the language of the opinions in them, clearly show that loss of services, as well as society and affection, were included in the legal meaning of

the loss of consortium. 1 Chitty on Pleading, 49; 2 *id.,* 306; *Guy v. Lusy,* 2 Rol. R., 51; *Russell v. Corne,* 2 Ld. Raym., 1031; *Guy v. Livesey,* 2 Cro. Jac., 501; *Hyde v. Scyffor,* 2 Cro. Jac., 538." And, further: "Blackstone's third class includes only cases in which personal injuries actionable in trespass are inflicted upon the wife. The situation presented in such cases, as bearing upon an injury to the relative rights of a husband, is very different from that which results from a wrong falling within one of the other two classes. The former are not only not destructive of the marital relation, but they have no tendency to even impair it. They are not calculated to change the feelings of the parties toward each other, to diminish their love and affection, to lessen the sweetness of their companionship, or to weaken the desire to do all that is incumbent upon the parties to a marital union. Their result is to impair physical capacity, and, in so far as the husband is concerned, to diminish the ability of the wife to render to and bestow upon him that aid and help, and those ministrations which, in health, she would be able to render and bestow. The disposition of mind remains unchanged, but the injuries received set limitations upon the ability to perform. The consequences to the husband are only those which flow from an impairment of physical capacity in the wife, and in no manner from a change of the mental and moral attitude, which means a destruction of the marital relation in all respects save form. Since Blackstone's day, there has been an extension of the common-law right of a husband to recover for loss of consortium to cases in which the personal injury sustained by the wife was the result of negligence, so that it is generally held that it makes no difference whether the injury is intentionally or negligently inflicted. 1 Cooley on Torts (3 ed.), 469, and cases cited in note."

In the opinion just cited, the conclusion is that the cases in which recovery by the husband for loss of consortium, resulting from personal injury to the wife has been approved, disclose that the loss of service and of the capacity for service, resulting from diminished or destroyed ability to serve in useful ways, has been the real basis of recovery, and that the contention that a husband could recover merely because conjugal affection, society, or companionship had been rendered less agreeable or satisfactory to him by reason of injury to his wife, should not be sustained.

At common law, the husband had a right to the labor and service of the wife, and in a suit for damages which were personal to him for an injury to his wife he was permitted to recover for the loss of her labor and services, as well as the expenses of her care and cure. *Kelly v. Railroad,* 168 Mass., 308; *Feneff v. R. R. Co.,* 203 Mass., 278. It was no

doubt upon this theory that in *Kimberley v. Howland,* 143 N. C., 399, this Court sustained the husband's recovery of damages for injury to his wife. In that case there was evidence as to the loss of the services of the wife; also that her injury was of such a character as to deprive the husband of her services, society, aid, and comfort. We do not understand the decision to be authority for the position that the husband had the legal right, without regard to the loss of his wife's services, to recover remote and consequential damages arising from her personal injury.

However, since this decision was rendered (1906), statutes have been enacted which materially modify the wife's legal status. She is now authorized to contract and deal so as to affect her real and personal property in the same manner and with the same effect as if she were unmarried. Pub. Laws 1911, ch. 109; C. S., 2507. Likewise her earnings derived from any contract for her personal service, and any damages for personal injury or other tort sustained by her, may be recovered in her individual suit; and such earnings or recovery shall be her sole and separate property. Pub. Laws 1913, ch. 13; C. S., 2513. By virtue of these statutes, the husband is deprived of such rights as he may have had at common law in the special benefits thus conferred upon the wife. *Shore v. Holt,* 185 N. C., 312; *Dorsett v. Dorsett,* 183 N. C., 354; *Croom v. Lumber Co.,* 182 N. C., 217; *Kirkpatrick v. Crutchfield,* 178 N. C., 348; *Patterson v. Franklin,* 168 N. C., 75; *Price v. Electric Co.,* 160 N. C., 450.

It may be observed in this connection that the facts disclosed in *Bailey v. Long,* 172 N. C., 661, are distinguishable from those in the case at bar. The foundation of liability in *Bailey's case* was the contractual relation existing between the plaintiff and the defendant; the action was not prosecuted by a stranger or a third party. Upon the second appeal (175 N. C., 687) the sole question was whether there was any evidence of negligence—whether the defendant had negligently failed "to attend and care for the plaintiff's wife in a proper and skillful manner," as he had contracted to do. This case is not decisive of the question now presented.

Whatever the rights of the husband may have been, the wife could not maintain an action at common law for the loss of consortium; and the prevailing opinion is that for indirect, remote, or consequential loss she cannot maintain such action since her emancipation from the former disabilities of married women. There is a lucid discussion of the subject in *Feneff v. R. R. Co., supra,* from which we quote: "The right to the consortium of the other spouse seems to belong to husband and wife alike, and to rest upon the same reasons in favor of each. Since the removal of the wife's disability to sue, this is now settled in most courts

by a great weight of authority. *Nolin v. Pearson,* 191 Mass., 283, and cases cited. It is now generally held, in accordance with the decision in *Nolin v. Pearson,* that, for a direct and intentional invasion of a wife's right of consortium by another woman, through the alienation of the husband's affections and criminal conversation with him, an action may be maintained, as a similar action may be maintained by a husband for a similar wrong inflicted through adultery with his wife. Formerly a wife could not maintain such an action, because her suit could only be brought by her husband, with whom she must join. The husband's own misconduct would ordinarily be a sufficient reason to prevent his bringing such an action, if, indeed, it would not bar him, in most cases, from maintaining an action against a joint wrongdoer. The change of the statutes in this Commonwealth, and similar changes in most other jurisdictions, have given wives the same right as husbands to sue an offender for a wrong of this kind.

"The wrong which may be redressed through such suits is one which has a direct tendency to deprive the husband or wife of the consortium of the other spouse. No case has been brought to our attention, and after an extended examination we have found none, in which an action for a loss of consortium alone has been maintained merely because of an injury to the person of the other spouse, for which the other has recovered, or is entitled to recover, full compensation in his own name, when the only effect upon the plaintiff's right of consortium is that, through the physical or mental disability of the other, the companionship is less satisfactory and valuable than before the injury. The actions by husbands at common law for expenses and loss of services, in which the loss of consortium has been considered in estimating damages, were all in cases in which no damages could be awarded for loss of the ability to earn money and render services and be helpful to others, in an action by the husband and wife for the wife's personal damages, because at common law all these elements of damage belonged to the husband. See cases cited in *Kelly v. New York, New Haven & Hartford Railroad, ubi supra.* There was not an allowance to the wife for her loss of ability to earn wages and render services, and at the same time an allowance to the husband, in the form of compensation for the loss of consortium for the same diminution of ability to be helpful.

"Where there is no intentional wrong, the ordinary rule of damages goes no further in this respect than to allow pecuniary compensation for the impairment or injury directly done. When the injury is to the person of another, the impairment of ability to work and be helpful and render services of any kind is paid for in full to the person injured. Ordinarily the relation between him and others, whereby they will be

detrimentally affected by the impairment of his physical or mental ability, makes the damage to them only remote and consequential, and not a ground of recovery against the wrongdoer. It may be conceivable that one may have a contractual right to the labor or services of another, continuing after the time of his injury, such that, if his ability is impaired, the contractor will be directly damaged. If there may be such a case, it is unnecessary to consider whether the contractor with such a right should have his action for damages, and receive his proper share of the amount allowable for the impairment of the other's earning powers, and the damages of the other be diminished accordingly. It is enough for the present case that persons whose relations to the injured party are purely domestic should not be permitted to share the compensation to which he is entitled for the impairment of his powers by the tort of another person, nor to receive an additional sum beyond the full compensation to which the injured person is entitled. Their damages are too remote to be made the subject of an action."

Substantially the same principle is upheld in the following cases: *Bolger v. Railway,* 205 Mass., 420; *Whitcomb v. Railroad,* 215 Mass., 440; *Gearing v. Berkson,* 223 Mass., 257; *Blair v. Seitner Dry Goods Co.,* 184 Mich., 304; *Brown v. Kistleman,* 177 Ind., 692; *Smith v. Building Co.,* 93 Ohio St., 101; *Marri v. Railroad, supra; Emerson v. Taylor* (Md.), 104 At., 538; *Tobiassen v. Polley* (N. J.), 114 At., 153; *Bernhardt v. Perry* (Mo.), 13 A. L. R., 1320; *Kosciolek v. Power Co.* (Or.), 160 Pac., 132. See, also, 13 R. C. L., 1445, sec. 495; note to *Hipp v. Dupont,* 18 A. L. R., 882; note to *Smith v. Building Co., supra,* 63 L. R. A. (1916-E), 103; *Neiberg v. Cohen* (Vt.), 55 L. R. A. (N. S.), 483.

In 30 C. J., 973, sec. 693 (3), it is suggested that the only case contravening this principle is *Hipp v. Dupont,* 182 N. C., 9. It becomes necessary, therefore, to determine the scope of this decision.

The record shows that W. B. Hipp, the plaintiff's husband, had brought suit in Virginia to recover damages for personal injuries alleged to have been caused by the defendants' negligence, and that judgment had been rendered against him. Afterwards the plaintiff instituted her action against the defendants in this State, not for injuries to her husband, but to herself, which she alleged to be (1) expenses paid by her, made necessary by her husband's injuries; (2) services performed in nursing and caring for him; (3) loss of support and maintenance; (5) loss of consortium; (6) mental anguish. A formal demurrer was filed, on the ground that the complaint did not state a cause of action. The demurrer was overruled, two of the justices evidently dissenting in part, because they concurred only in the result.

It is clear, in our opinion, that the complaint stated a cause of action, and that the demurrer was properly overruled; for, as is said in the opinion, the plaintiff had a cause of action for injuries which were personal to herself and not the remote consequences of the defendants' negligence. But the authorities cited in the opinion do not uphold the contention that the loss of consortium, under the facts disclosed in *Hipp's case,* or in the case at bar, constitutes a cause of action on behalf of the wife. *Holleman v. Harward, Flandermeyer v. Cooper,* and *Jaynes v. Jaynes,* therein cited, are based on the principle of a direct and intentional invasion of the marital relation, and in practically all jurisdictions actions of this character are recognized, and the excerpt from *Bernhardt v. Perry* occurs in a dissenting opinion and not in the opinion of the Court.

After diligent research, we have failed to find a single decision (apart from the intimation in *Hipp v. Dupont, supra)* which approves the wife's right to recover damages for the loss of consortium, under the circumstances appearing in the instant case; and to sanction such right of recovery would be tantamount to the recognition of a doctrine utterly at variance with the most enlightened judicial opinion prevailing in other jurisdictions.

Upon the facts appearing, if the plaintiff has no cause of action for loss of consortium, she has none for mental anguish. Between her and the defendant there existed no mutual relation, contractual or other, and upon her the defendant inflicted no physical injury. The question of liability for fright, followed or unaccompanied by physical injury, does not arise. *Kimberly v. Howland, supra.* The question is whether the plaintiff may recover damages for the mental anguish she experienced from the sight and knowledge of her husband's suffering when she has no other cause of action. It may be admitted that mental anguish, suffered in connection with a wrong which, apart from such mental pain, constitutes a cause of action, may be a proper element of compensatory damages. *Britt v. R. R.,* 148 N. C., 37; *Watkins v. Mfg. Co.,* 131 N. C., 536. But the general rule is that mental suffering, unrelated to any other cause of action, is not alone a sufficient basis for the recovery of substantial damages. To this rule there are exceptions, of course, as, for example, actions for breach of promise of marriage (*Allen v. Baker,* 86 N. C., 92), or actions growing out of the failure properly to transmit and deliver telegraphic messages not of a pecuniary nature (*Young v. Tel. Co.,* 107 N. C., 370, and other cases), and similar instances in which mental suffering is recognized as the ordinary and proximate consequence of the wrong complained of. See 17 C. J., 828, sec. 151 *et seq.,* and cases cited.

But in these cases the relation existing between the offender and the complaining party was proximate, not remote. This distinction is crucial. "In the law, mental anguish is restricted, as a rule, to such mental pain or suffering as arises from an injury or wrong to the person himself, as distinguished from that form of mental suffering which is the accompaniment of sympathy or sorrow for another's suffering, or which arises from a contemplation of wrongs committed on the person of another." 8 R. C. L., 515, sec. 73, and cases cited.

In view of the decision in *Hipp v. Dupont, supra,* the instruction complained of was not devoid of apparent sanction; but, after careful examination of the authorities, we are satisfied that the plaintiff is not entitled to damages for mental anguish or loss of consortium, upon the facts developed in the record, and that the defendant's prayer to this effect should have been given. Any intimation to the contrary in *Hipp v. Dupont* is disapproved.

In declining the defendant's prayer, and in giving the instruction excepted to there was

STACY, J., did not sit.