**Earshlie I. ALBERT, Plaintiff,**

v.

**Margaret C. McGRATH.**

**Civ. A. No. 2448-56.**

United States District Court
District of Columbia.

July 31, 1958.

Arthur L. Willcher, Washington, D. C., for plaintiff.

Jean M. Boardman, Washington, D. C., for defendant.

TAMM, District Judge.

The present action is a suit filed by Mrs. Earshlie I. Albert against the defendant, Mrs. Margaret C. McGrath. The complaint is set forth in two counts —count one charging the defendant with having alienated the affections of the plaintiff's husband, Mr. Albert, and count two charging the defendant with having had criminal conversation with Mr. Albert.

At the close of the plaintiff's case, the defendant moved for a directed verdict as to both counts of the complaint. This Court took the motion under advisement and required the defendant to offer her evidence. At the conclusion of all of the evidence, the defendant renewed her motion to dismiss, and the Court acting under Rule 50(b), Federal Rules of Civil Procedure, 28 U.S.C.A., continued the motion under advisement. After instruction to the jury, both issues were submitted to the jury. The jury returned a verdict on count one of the complaint in favor of the plaintiff in the sum of $5,000.00 but found for the defendant as to count two of the complaint. Thereafter, the defendant filed a motion for judgment n.o.v. to which

the plaintiff filed objection, and hearing was waived on this motion.

The defendant sets forth two contentions in support of her motion for a directed verdict as to count one of the complaint. Her first contention is that as a matter of law this action for alienation of affections cannot be maintained because the law of Maryland is the governing law, and that state has abolished such an action. Annotated Code of Maryland, Art. 75C. Her second point is that the plaintiff has not shown that the "loss of consortium" which is the gist of such an action was caused by the defendant.

Regarding her first point, defendant's argument is briefly this: The plaintiff and her husband were residents of Maryland at the time the alleged alienation of affections took place; the plaintiff has maintained her residence in Maryland to the present; and, the injury or damage complained of did not occur in the District of Columbia but rather in Maryland, which, as stated above, was the site of the home of the plaintiff and her husband. Defendant argues that since the basis for such an action is loss of consortium, this injury could occur only at the marital domicile and thus, the law of the marital domicile should apply. As previously pointed out, an application of Maryland law to the present situation would deprive this plaintiff of a cause of action for alienation of affections.

As stated previously, the gist of such an action is loss of consortium. Chief Justice Shepard in the case of Dodge v. Rush, 28 App.D.C. 149, at page 152 wrote the following:

"The gist of the action for the alienation of affections is said to be the loss of consortium—that is, the loss of the conjugal fellowship, company, cooperation, and aid of the husband or wife. Loss of consortium is the actionable consequence of the injury, and alienation of affections is a matter of aggravation."

The theory of such an action as this was originally the loss of services:

"For it was presumed that by the reduction or alienation the wife's services were rendered less valuable. But whatever may have been the principle, originally, upon which this class of action was maintained, it is certain that the weight of modern authority bases the action on the loss of consortium; that is, the society, companionship, conjugal affections, fellowship and assistance." (Madden on Persons and Domestic Relations, p. 166).

"The husband's interest in his relation with his wife first received recognition as a matter of her services to him as a servant. Over a period of some centuries it took form as something considerably broader than this, which was given the name of 'consortium'. Consortium was said to be made up of a bundle of legal rights to the alliterative trio of the services, society and sexual intercourse of the wife. To these elements the modern law has added a fourth, that of conjugal affection. The rights of a husband extend to all four; and while it is seldom that the defendant's conduct interferes with only one of them, it now seems clear in nearly all jurisdictions that such interference with any one will be sufficient as a foundation for the action. The loss of services essential at the beginning, no longer is indispensable and is now only one element upon which the action may be based." Law of Torts, Prosser, p. 683.

Continuing at page 691:

" * * * and in virtually all states, the wife is now given the same rights and remedies as the husband, either by specific statutes or by a more liberal interpretation of the Married Women's acts in recognition of social changes."

Thus, in many jurisdictions the common law disability that attached to women has been removed, and the right of a woman to sue in such an action as this has been recognized. Such is the law in the District of Columbia. Hitaffer v. Argonne Co., 87 U.S.App. D.C. 57, 183 F.2d 811, 23 A.L.R.2d 1366.

The basic problem involved in the present case is one of conflicts of laws. The action is maintainable in the District of Columbia but has been abolished in the state of Maryland. Thus, it becomes necessary to determine which body of law is to govern the facts in this case. The factual basis for the existence of this conflict problem is that the acts or wrongs that effected the alienation took place in the District of Columbia, while the injury or damage, according to the defendant, took place in Maryland.

The general rule of law applicable in conflict situations in tort actions is stated in Orr v. Sasseman, 5 Cir., 239 F.2d 182, 186:

"The law of the place where the tort or wrong has been committed is the law by which liability is to be determined. The place of the wrong is the place where the injury was sustained rather than where the acts were committed. It is the place where the last event necessary to make an actor liable for an alleged tort takes place."

Also, "the place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place." Restatement, Conflicts of Law, Sec. 377.

The defendant, in addition to relying upon the general rule as stated above, also relies upon the case of Eastern Air Lines v. Union Trust Co., 95 U.S.App. D.C. 189, 221 F.2d 62, and upon the case of Bernstein v. National Broadcasting Co., D.C. 129 F.Supp. 817, affirmed at 98 U.S.App.D.C. 112, 232 F.2d 369. In the first of these cited cases, the court does no more than restate the general rule regarding tort situations cou-

pled with a conflict of law question and states why the general rule does not apply in that case. The majority of the court held that the law of the state where the negligence or wrongful acts took place should measure the extent of the damages rather than the law of the District of Columbia where the injury actually took place. However, the basis for this ruling was an interpretation of the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671–2680, which, the majority of the court held, disregarded the general rule by reason of its wording. The court, 221 F.2d at page 80, wrote:

"The general conflicts rule disregards the law of the place of the negligent act or omission and, instead, uses the law of the place where the injury was sustained. My brothers Edgerton and Fahy * * * hold that Congress thus provided in explicit terms for the Government's liability to be measured under the law of the place where its negligent employee's act or omission occurred, and that therefore the Act requires Virginia law to be applied in this case."

In the second cited case relied upon by the defendant, Bernstein v. National Broadcasting Co., supra, many issues were presented to the trial court—one of which being a conflict of law situation involving tort liability. The action was based on invasion of privacy by publication through a television broadcast. The publication was set in motion in New York with the acting of the story and transmission was completed in the District of Columbia. The trial court held that the impact took place in the jurisdiction where the plaintiff was when his feelings were wounded. (There was a dispute as to whether the law of the District of Columbia, or the law of Virginia, would apply. The plaintiff admitted that his domicile was in Virginia but contended that his greater number of contacts were in the District of Columbia.) Judge Richmond Keech, whose opinion the Court of Ap-

peals for the District of Columbia adopted, held that since the gravamen of the action is injury to the feelings of the plaintiff, the mental anguish and distress caused by publication and as this tort is a personal injury, "the question whether plaintiff has a cause of action on the facts stated by him should be determined by the law of the jurisdiction where he sustained the injury."

"Thus * * * although the publication was set in motion in New York with the acting of the story and the transmission was completed in the District of Columbia by WNBW, the harm did not occur until the impact of the telecast upon plaintiff, in whatever jurisdiction he may be considered to have had his situs." 129 F.Supp. at pages 825, 826.

The main authority relied upon by the plaintiff is the case of Gordon v. Parker, D.C., 83 F.Supp. 40, affirmed at 1 Cir., 178 F.2d 888. However, the case of Gordon v. Parker, supra, is discussed in the case of Orr v. Sasseman, supra, and will be treated subsequently in the discussion of the Orr case.

The situation in the Orr case was as follows: The plaintiff Sasseman was a resident of Illinois and the defendant Orr resided in Georgia. The plaintiff and his wife spent the Christmas Holidays of 1954 in Georgia with his wife's parents. The defendant was a friend of the parents and a frequent visitor in their home. Orr had met the plaintiff's wife two years previous to 1954 and had seen her on one other occasion before Christmas of 1954. After New Year's Day, the plaintiff returned to Illinois, and his wife remained in Georgia until early February. It is during this period that the defendant is said to have alienated the affections of the plaintiff's wife. During this time, the defendant saw Mrs. Sasseman on a few occasions, took her on a fishing trip in the company of others that lasted for about two days and three nights. Mrs. Sasseman also accompanied the defendant on a business trip that lasted about three hours. Testimony at the trial showed that when she returned to her home in Illinois, she confessed to a friend her affection for Orr, that their relationship was on a friendly basis, and that he had kissed her. She also told her friend, who testified, that she did not think that she loved her husband any more and that her friends and some of her other relatives in Atlanta liked Orr and "thought they made a darling couple." 239 F.2d at page 184.

The court also received evidence of events that took place after Mrs. Sasseman left Georgia. On one occasion she and one of her children accompanied Orr and five others on a ten day cruise. Also, there was evidence of a series of meetings in Chicago between Orr and Mrs. Sasseman, one of which occurred in his hotel room.

The conflicts question arose in this manner: Under Illinois law, where the defendant claimed the tort took place— if it took place at all—recovery by a plaintiff is limited to actual damages sustained. Under Georgia law, however, where the action was brought, punitive damages may be recovered, as well as actual damages, and also compensation for wounded feelings. The jury returned a verdict for the plaintiff in the sum of $17,500. The court, on appeal, said that the questions presented, "are but aspects of the single problem of whether the evidence showed a cause of action accrued in the State of Georgia." At page 184.

In discussing the conflicts problem on appeal, the court wrote at page 186 the following:

"In Gordon v. Parker, D.C.Mass. 1949, 83 F.Supp. 40, a case was presented with a factual situation very like that which confronts us. The case is probably the only one dealing with conflict of laws on issues of liability for alienation of affections and similar causes of action. In the cited case the plaintiff husband had resided with his wife in Pennsylvania. The defendant, a resident of Massachusetts, was sued

there for the alienation of the affections of the plaintiff's wife. Pennsylvania, by statute, had abolished this cause of action. Massachusetts had not. Massachusetts adhered to the doctrine of determining tort liability by the law of the place where the wrong occurred. It was held that the Massacusetts law applied and the action could be maintained. A judgment for the plaintiff was affirmed but the conflict of laws question was not presented on appeal. Parker v. Gordon, 1 Cir., 1949, 178 F.2d 888.

"In the case before us the district judge, with painstaking care, instructed the jury as to the contentions of the parties as to where the cause of action accrued and commented upon the right of recovery under the laws of each of the states. The jury was charged that the cause of action accrues when there is a loss of consortium and adequately explained the meaning of 'loss of consortium'. The jury was told that if there was a loss of consortium occurring in Illinois then the verdict would be * * * for the plaintiff. No objection was made to these or any of the other instructions of the court. We cannot say, as a matter of law, that there could not have been an alienation of the affections of the plaintiff's wife in Georgia. The jury has said that there was. Its verdict forecloses the question."

Judge Wyzanski in the case of Gordon v. Parker, supra, determined that Massachusetts law should apply because, he stated, aside from Pennsylvania having an interest in the case, Massachusetts also had an interest, for that is where the alleged misconduct took place and where the alleged wrongdoer lives, and impliedly concludes that Pennsylvania interests do not outweigh Massachusetts interests.

Also, 83 F.Supp. at page 42 he writes:

"Moreover, departures from the territorial view of torts ought not to be lightly undertaken. There was a time in Anglo-American history when persons from abroad did not have the full benefit or burden of local private law * * *. It is, therefore, not necessarily a forward step for courts now to adopt a doctrine that in all matrimonial tort cases the right to maintain a suit against a local defendant on account of local conduct turns on the matrimonial domicil of the plaintiff. To be sure, technically this will not reintroduce a doctrine of personal disability. For the doctrine will make the applicable rule depend not on the person of the plaintiff or his lack of local citizenship, but on a relationship involving him, his foreign spouse and his foreign state. Yet, the lay plaintiff will regard the distinction as involving a personal discrimination against him rather than as a step toward comity between states. This would be particularly true if the rule should be applied to a plaintiff who was formally domiciled in one state but who spent most of his time with his wife in the state where the misconduct occurred.

"Furthermore, up to now I have assumed what is by no means clear, that the present case involved some implied Pennsylvania policy. So far as appears, Pennsylvania has no general policy that injured spouses should bear their suffering in silence and rely exclusively upon the forces of social ostracism and religious discipline. Pennsylvania was concerned with not having Pennsylvania courts hear this sordid type of controversy and not having Pennsylvania citizens and visitors called upon to defend actions which have so often been motivated by spiteful or ulterior purposes. That is, Pennsylvania has spoken qua possible forum and qua possible state of defendant's domicil, but not qua state of matrimonial domicil. In any event, its

policy is not connected with the purification of Massachusetts courts or the immunization of Massachusetts defendants who have been acting illicitly in Massachusetts.

"My conclusion finds some support in a decision of the Swiss Federal Court which held that where the wrong occurred in Switzerland, a plaintiff, subject of and domiciled in Denmark, could bring an action in Switzerland for disruption of marriage, despite the contrary Danish law."

It seems that the basic reason for Judge Wyzanski's applying the law of Massachusetts was a "balancing of interests" with the decision that Massachusetts had a greater interest than Pennsylvania, the marital domicile.

■ The nature of the right to, or of, consortium must be considered in determining the basis of the plaintiff's claim in this case. This nature is discussed, defined and described in many texts and recorded cases. The Court refers especially to the case of Hipp v. E. I. Dupont de Nemours & Co., 182 N.C. 9, 108 S.E. 318, 18 A.L.R. 873, citing Flandermeyer v. Cooper, 85 Ohio St. 327, 98 N.E. 102, 40 L.R.A.,N.S., 360, which, in turn, cited Cooley on Torts (3rd Ed., p. 477). The Court refers further to Hinnant v. Tide Water Power Co., 189 N.C. 120, 126 S. E. 307, 37 A.L.R. 889; Pratt v. Daly, 55 Ariz. 535, 104 P.2d 147, 130 A.L.R. 341, which, in turn, quotes approvingly Foot v. Card, 58 Conn. 1, 18 A. 1027, 6 L.R.A. 829. The Court also refers to the Restatement of the Laws treatment of "Torts", Sec. 683, comment d, and to Prosser's Law of Torts at page 685. In action for loss of consortium, loss must be evidenced to establish a cause of action. The "change in the state of mind" must be evidenced by some external conduct. Logically, then, there is no cause of action until there is evidence of the loss of consortium, but this essential element of the cause of action occurs only at the matrimonial domicile and, consequently, under the general conflicts rule, the law of the matrimonial domicile will govern. The Court, accordingly, grants the defendant's motion for judgment non obstante verdicto. Counsel will submit appropriate order.