LOUISE G. HUTCHINS v. RUSSELL V. DAY.

(Filed 8 March, 1967.)

**1. Seduction § 6—**

In order to maintain a civil action for seduction, plaintiff must show that intercourse was induced by promise of marriage or by deception, enticement or other artifice, and when plaintiff's evidence discloses that the first act of intercourse was consented to by plaintiff, voluntarily and knowingly, without promise or inducement, the maxim, *volenti non fit injuria* applies, and nonsuit is properly entered.

**2. Breach of Promise of Marriage—**

A promise of marriage by a man already married will not support an action for breach of promise of marriage, but promises made subsequent to his divorce may be made the basis of such an action.

**3. Same—**

It is not required that a promise of marriage embrace a definite date, it being sufficient if the evidence justifies a finding by the jury of the existence of an engagement, but the marriage of one of the parties to another person is a definite breach of promise.

**4. Same—**

Plaintiff's evidence *held* sufficient to show a valid contract of marriage entered into by the parties in this State and a breach of the contract in this State, precluding nonsuit, notwithstanding evidence that would also permit a finding that the promise of marriage was made in another state which does not recognize such cause of action.

**5. Same; Courts § 20—**

Where the promise of marriage is made in a state not recognizing a cause of action for breach of promise, a plaintiff may not maintain a cause of action here for breach of promise of marriage, and therefore defendant's allegations that the promises of marriage were made exclusively in such other state sets up a valid defense and motions to strike such allegations are properly denied.

HIGGINS and LAKE, J.J., concurring in part and dissenting in part, vote to affirm the judgment of nonsuit as to both causes of action.

APPEAL by plaintiff from *Johnston, J.,* at June 1966 Civil Session of GUILFORD County Superior Court, docketed and argued at Fall Term, 1966 as No. 703.

Plaintiff instituted this civil action against the defendant for damages allegedly resulting from seduction and breach of promise to marry.

Plaintiff's evidence tends to show that she came to work as a teacher in Sumner School in Guilford County at the age of twenty-two years upon graduation from college. Defendant, a married man of forty-nine years of age was the principal. Plaintiff and defendant began dating each other secretly in the Greensboro area, and within a few weeks they began an affair spending weekends in motels, and seeing each other two or more times per week for some four years. At that time (summer of 1959) the defendant lost his position because he was having an affair with another one of his teachers, Coleen Long. The defendant then went to Alaska for a year and returned to California, where he remained until the end of the school year 1964.

Meanwhile, the plaintiff had also gone to California, and they continued their relationship.

The plaintiff testified that for some seven years the defendant spoke of their marriage when he obtained a divorce, which occurred in 1962. The defendant then stated he wanted to improve his financial condition before they got married, and in 1963 when the plain-

tiff had become pregnant, he offered the excuse that he was too old to have children and that an illegitimate child was no way to start their marriage. The plaintiff had an abortion in early 1964.

From 1960 to 1964 plaintiff and defendant traveled together from California to North Carolina on several trips. In that year the defendant told the plaintiff that he was going to marry Miss Coleen Long, and invited the plaintiff to attend the wedding as a guest! The plaintiff attended the wedding and as the bride passed her, she threw red ink on her and other members of the wedding party.

The plaintiff testified that she had never had sexual relations with any man except the defendant.

At the close of plaintiff's evidence the motion of defendant for judgment as of nonsuit was allowed, and plaintiff appealed.

*Alston, Alexander, Pell & Pell for plaintiff appellant.*
*Russell V. Day (In propria persona) for defendant appellee.*

PLESS, J.  While an action for civil seduction may be maintained without a promise to marry, the mere proof of intercourse, and no more, is not sufficient to warrant recovery. *Volenti non fit injuria. Hardin v. Davis,* 183 N.C. 46, 110 S.E. 602. This Latin phrase is translated to mean "To the consenting no injury is done. A person who consents to a thing cannot complain of it as an injury." Upon the plaintiff's testimony she started spending weekends with defendant in a motel within a few days after she had met him, but claims she did not have sexual relations with him until several weekends of this kind, that is, on 10 October, 1955.

It is further said in *Hardin v. Davis, supra,* that intercourse induced by deception, enticement or other artifice will suffice, however. The plaintiff fails to bring herself within any of the above requirements as there is no claim that defendant promised to marry her prior to the first intimate relations, although he did say he did not love his wife and did not intend to live with her any more. The evidence of the plaintiff cannot be read without coming to the conclusion that the plaintiff voluntarily and knowingly consented, and quickly surrendered herself to the defendant. There was no element of deceit and she testified that she enjoyed the sexual pleasures he offered her.

The court was correct in sustaining defendant's motion for judgment as of nonsuit on the count charging civil seduction and it is hereby *affirmed.*

As to the cause of action based upon breach of contract of marriage:

"Any promise of marriage made by or to a person who, to the

knowledge of the parties has a husband or wife living, is absolutely void in its inception and is ineffectual to give rise to an action even though such a promise is not to be performed until after the death of the promissor's or promisee's husband or wife. Likewise, such a promise is void when made by a married person in expectation of a divorce by force of a pending suit. Such contracts are opposed to morality and public policy; they are in themselves a violation of marital duty, and the persons who make them are morally unfaithful to the marriage tie." 12 Am. Jur. 2d, Breach of Promise, Sec. 7, page 708.

But it is also held that after the disability is removed "a renewal by the defendant of the promise after the dissolution of the marriage relation existing while the promise was made will sustain an action for its breach." 12 Am. Jur. 2d, Breach of Promise, Sec. 7 (1964). *Elmore v. Haddix,* 254 Ky. 292, 71 S.W. 2d 620; *Sanctuary v. Cary,* 51 R.I. 224, 153 Atl. 316; *Ferguson v. Jackson,* 248 S.W. 66 (Tex. Ct. Civ. App.); *Edelbaum v. Lustig,* 250 N.Y. Supp. 561 (New York City Ct.); Keezer, Marriage and Divorce, Sec. 90, p. 127 (3rd Ed. 1946). See *Strickland v. Anderson,* 186 S.C. 482, 196 S.E. 185.

The following excerpts from the testimony of the plaintiff, taken in the light most favorable to her, tend to show that the marriage contract was renewed after the disability of the defendant had been removed: "He promised to marry me in California, and he promised periodically. He promised even before he got his divorce and after too. This was done periodically — North Carolina, across the country, and California, all the way across. * * * That was in 1962 when he drove back here in the spring, and he told me that the divorce was final. I believe it was in 1962, the spring we drove back to North Carolina in the spring of 1962. He told me periodically, not every day, but we talked about it. Sometimes it would come up once a month or occasionally. When I first learned that he had gotten a divorce or his wife had divorced him was in North Carolina in the spring of 1962. That is what he told me, and he kept telling me the following year that he had the divorce but we wouldn't be married until he paid his bills. * * * He was free to marry me from September 1962 up until the time he got married to somebody else two years later. During the whole two-year period, he did say that he was going to marry me. He said this periodically. I can't give you the date or day. I do not mean once a week. The matter came up approximately once a month."

A contract to marry need be in no specific terms. "If the conduct and declarations of the parties clearly indicate that they regard themselves as engaged, it is immaterial as to what means they

have arrived in that state." Lee, North Carolina Family Law, Vol. 1, § 2, page 10. While a contract of marriage requires an agreement between the parties and a meeting of the minds, human nature is such that a courtship does not follow any formal pattern and, as above stated, conduct and terms of endearment between the parties may be sufficient to justify a jury in finding the existence of an engagement. "If either party refuses to perform, the only legal remedy of the other party is an action for damages for the breach of the promise * * * and the marriage to another is, of course, a definite breach." Lee, supra, page 11.

Construing the evidence in the light most favorable to plaintiff, it is sufficient to justify a finding that defendant promised to marry plaintiff after the defendant's disability was removed.

In his further defense the defendant denied entering into a contract of marriage with the plaintiff, but asserted that if such contract were made it was in California, whose statute (Civil Code of California, § 43.4) provides that a fraudulent promise to marry does not give rise to a cause of action for damages. Another California statute (Ibid 43.5) pleaded by defendant provides that a breach of promise of marriage is not an actionable wrong. He further pleaded that any cause of action * * * arose outside of North Carolina and, the plaintiff and defendant both being nonresidents of the State of North Carolina, cannot maintain her action against defendant in the courts of North Carolina. In addition the defendant pleads the provisions of G.S. 1-87.1, which provides for dismissal of an action arising out of the State when parties are nonresidents.

The plaintiff moved to strike the foregoing portions of the further answer and the facts relating thereto. This was denied and the plaintiff excepted.

The quoted excerpts from the plaintiff's testimony are sufficient to sustain a finding by the jury that there was a valid contract of marriage entered into by the parties in North Carolina; that it was breached in North Carolina; and upon such findings she would be entitled to recover damages in the courts of this State.

On the other hand, the defendant is entitled to present his defense to the effect that there was no contract of marriage in North Carolina; that if any contract were made it was in the State of California, which, under its statutes, does not permit a cause of action for the breach thereof.

In our research we find a number of cases in which the courts of States having a statute similar to the two California statutes have refused to allow recovery where the contract and breach occurred in a State not having this legislation. O'Conner v. Johnson, 74 F. Supp. 370; Thome v. Macken, 58 C.A. 2d 76; 136 P. 2d 116; Albert

*v. McGrath,* 278 F. 2d 16, 165 F. Supp. 461, *A. B. v. C. D.,* 36 F. Supp. 85, *Calcin v. Milburn,* 176 F. Supp. 946, *Gaines v. Poindexter,* 155 F. Supp. 638.

While we have been unable to find a decision on the exact converse of this case, we think that by analogy *Shaw v. Lee,* 258 N.C. 609, 129 S.E. 2d 288, is applicable. In that case the plaintiff was a resident of North Carolina and was injured in Virginia while riding as a guest of her husband in an automobile owned and operated by him. She sued her husband and the driver of the other vehicle involved. The court sustained a demurrer, saying that the plaintiff alleged a right of action in Virginia to recover for injuries sustained there; Virginia does not give a right of action to one spouse to recover damages from the other for injuries to the person negligently inflicted. In upholding the ruling of the lower court, Rodman, J., quoted with approval from *Dawson v. Dawson,* 138 So. 414 (Ala.) "The only true doctrine is that each sovereignty, state or nation, has the exclusive power to finally determine and declare what acts of omissions in the conduct of one to another — whether they be strangers, or sustain relations to each other which the law recognizes, as parent and child, husband and wife, master and servant, or the like — shall impose a liability in damages for the consequent injury, and the courts of no other sovereignty can impute a damnifying quality to an act or omission which afforded no cause of action where it transpired."

Justice Rodman also quoted from *Gray v. Gray,* 94 A.L.R. 1411; "The common law rule that the spouses cannot sue each other is more than a prohibition against maintaining an action, but is a substantive rule which prevents the creation of a cause of action as between the spouses."

He concluded that "Claimant's right to recover and the amount which may be recovered for personal injuries must be determined by the law of the State where the injuries were sustained. If no right of action exists there, the injured party has none which can be enforced elsewhere."

It follows that a party to a contract made in a State which denied recovery for its breach should not be allowed to recover in another State, although the breach occurred in the forum State, and that a contract unenforceable in the State where it is made should not be enforceable in the courts of this State. Thus if the alleged marriage contract were made in the State of California, the defendant would not have been liable. The motion to strike the allegations offered by the defendant was therefore properly denied.

The judgment of nonsuit on the action for seduction was cor-.

rect, but the judgment for nonsuit for breach of marriage contract is hereby
   Reversed.

HIGGINS and LAKE, J.J., concurring in part and dissenting in part, vote to affirm the judgment of nonsuit as to both causes of actions.