19241

R. D. BERRY et al., Individually and as Members of A Class, Appellants, v. John W. LINDSAY, as Chief Insurance Commissioner, Respondent.

(182 S. E. (2d) 78)

*J. Reese Daniel, Esq.,* of Columbia, *for Appellants,*

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Glen E. Craig,* of Columbia, *for Respondent,*

June 16, 1971.

*Per Curiam:*

This is an appeal from an order of the Richland County Court sustaining a demurrer to a petition for a writ of Prohibition, which order will be reported herewith, there being deleted therefrom, however, the concluding paragraphs, which we need not consider. For the reasons set forth in said order, we are convinced that the demurrer was properly sustained and that the exceptions of the appellants are without merit.

Affirmed.

## ORDER OF JUDGE MASON

This proceeding was instituted by Petitioners on September 4, 1970. They seek a Writ of Prohibition "restraining the issuance of additional rate increases for automobile liability insurance so long as the Insurance Industry as a whole is showing a profit."

The Petitioners allege, in substance, that they have instituted this proceeding on behalf of themselves and all others similarly situated in this State; that Respondent's duties include taking testimony, finding facts and determining and setting a fair rate for automobile liability insurance and that such duties are of *quasi*-judicial nature; that they have an economic necessity to procure automobile liability insurance and are for all practical purposes required by law to purchase such insurance; that many of them have been relegated to the Assigned Risk Pool to procure insurance in view of cancellations and refusals to renew by various insurers; that they have attended as many insurance rate hearings as possible, but that they do not know which insurer will be insuring them next and therefore which insurer's rates they should protest, and that it is impossible for them to attend every rate hearing; that on information and belief the insurers doing business in this State as an industry are all making large profits and returning millions of dollars

to their owners and stockholders by way of dividends and have no need for higher rates; that despite such evidence Respondent has consistently granted automobile liability insurance rate increases to most applicants and has indicated that additional increases will be granted, thereby abusing the discretion vested in him; that by reason of such abuse of discretion Petitioners are now and will be required to pay confiscatory premiums which constitutes a taking of their property without due process and without adequate compensation in violation of their rights under the Constitutions of this State and of the United States; and that they have no other available and adequate remedy except through this proceeding.

Automobile liability insurance rates are regulated under Chapter 8 of Title 37 of the Code. The pertinent statutory requirements are that rates shall not be excessive, inadequate or unfairly discriminatory. Respondent's duties include (a) holding a public hearing prior to an increase in rates, (b) reviewing each automobile liability insurance rate filing to determine if the rates thereby produced meets such requirements, (c) approving each such filing if he finds that the rates thereby produced do meet such requirements, and (d) disapproving each such filing if he finds that the rates thereby produced do not meet such requirements. Sections 37-651, 37-658.1, 37-683, 37-684, 37-694 and 37-703 of the Code.

The Respondent demurred to the Petition on the ground that it fails to state facts sufficient to constitute a cause of action. The Respondent also demurred to the Petition on two additional grounds. First that there is a defect of parties and second that the Court is without jurisdiction of the subject of this action. Counsel for the parties submitted Briefs and made oral arguments.

The first ground for the Demurrer is that the Petition fails to state facts sufficient to constitute a cause of action. While six reasons are given to support this ground I feel

initially that it is only necessary to consider the first three reasons which are as follows:

1. That Respondent's approval of an increase in automobile liability insurance rates is not a judicial or *quasi*-judicial function and therefore the Writ of Prohibition will not lie to prohibit such approval.

2. That even if such approval were a judicial or *quasi*-judicial function the Writ sought here would not lie since the alleged ground therefor is abuse of discretion which is not a ground for the issuance of such a Writ.

3. That even if such approval were a judicial or *quasi*-judicial function and even if a valid ground for such Writ were alleged in the Petition, the Writ sought here would not lie since Petitioners have an adequate and applicable remedy for review of such approval. Section 37-701; Sections 37-70 through 37-74; and Section 46-719 of the Code.

■ Initially counsel for the Petitioners argues that this proceeding presents a novel question and therefore it ought not be decided on Demurrer and that the Demurrer admits the allegation of *"quasi*-judicial" and "inadequate remedy."

I think this argument was put to rest in *Vickers v. Vickers,* S. C., 176 S. E. (2d) 561 (September 17, 1970). There the Supreme Court reversed the lower Court which overruled the Demurrer and the Supreme Court stated as follows:

"A demurrer however does not admit the inferences, either factual or legal, drawn by a party in the pleading under attack, but it is for the court to determine whether such inferences are justified.

\* \* \*

"At the outset, it is suggested that since the question here involved is a novel one in this jurisdiction, we should apply the liberal rule adopted in *Springfield v. Williams Plumbing Supply Company,* 249 S. C. 130, 153 S. E. (2d) 134, and decide the question raised by the demurrer only

after a trial on the merits. The rule in *Springfield* has application where 'a demurrer to a pleading raises merely a doubtful question or the case is such that justice may be promoted by trial on the merits.' Such is not the situation here. The demurrer does not raise merely a doubtful question. The issue is simply whether the refusal of the wife to have sexual relations with the husband affords a basis for granting a divorce on the ground of desertion and physical cruelty. Development of the details at a trial would not aid in the decision of that question."

In my view the Demurrer does not admit such allegations and it is for the Court to determine whether they are justified. I feel the initial issue here is simply whether the Respondent's approval of an increase in automobile liability insurance rates for the future is a *quasi*-judicial function and if so whether the Writ will lie to prohibit Respondent from approving such an increase in rates even if such approval would constitute an erroneous decision. As stated in *Vickers, supra,* "Development of the details at a trial would not aid in the decision of that question."

The Writ of Prohibition was discussed in *Ex Parte Jones, et al.,* 160 S. C. 63, 158 S. E. 134, 137 (1931) as follows:

"The ancient perogative writ of prohibition has been recognized and employed in the common-law system of jurisprudence for more than seven centuries, and like all perogative writs should be used with forebearance and caution, and only in cases of necessity.

\* \* \*

"With regard to the function and scope of the writ, it has been settled in this state from an early period that it will only lie to prevent an encroachment, excess, usurpation, or improper assumption of jurisdiction on the part of an inferior court or tribunal, or to prevent some great outrage upon the settled principles of law and procedure; but, if the inferior court or tribunal has jurisdiction of the person and subject-matter of the controversy, the writ will not lie

to correct errors and irregularities in procedure, or to prevent an erroneous decision or an enforcement of an erroneous judgment, or even in cases of encroachment, usurpation, and abuse of judicial power or the improper assumption of jurisdiction, where an adequate  and applicable remedy by appeal, writ of error, *certiorari,* or other prescribed methods of review are available."

The foregoing was quoted with approval in *State Board of Bank Control v. Sease,* 188 S. C. 133, 198 S. E. 602 (1938). There is also a clear discussion of the Writ in *Holladay v. Hodge,* 84 S. C. 91, 95, 65 S. E. 952 (1909). Also see the following:

"A writ of prohibition may issue in a proper case to restrain a judicial act; and, on the other hand it will, according to the weight of authority, ordinarily issue only to restrain the exercise or performance of judicial functions or acts, or acts which are *quasi*-judicial in their character." 73 C. J. S. Prohibition § 7, page 23.

Pertinent rate decisions involving the Writ are *Spring Valley Water Works v. Bartlett, et al., Board of Supervisors of City and County of San Francisco,* 63 Cal., 245, 246 (1883); *Oklahoma Operating Company v. Love,* 252 U. S. 331, 40 S. Ct. 338, 64 L. Ed. 596, 598 (1919); *State ex rel. Swearingen v. Railroad Commissioners of Florida,* 79 Fla. 526, 84 So. 444, 445, 446 (1920); and *Wilson & Co. v. Oklahoma Gas & Electric Co., et al.,* 190 Okl. 528, 126 P. (2d) 1009, 1010, 1014 (1942).

In *Spring Valley, supra,* the Court stated as follows:

"In our judgment the matter of fixing water rates is not judicial, and for this reason the writ of prohibition cannot be awarded. This has been frequently held by this court."

In *Oklahoma Operating Company, supra,* the Court stated as follows:

"The proviso 'that the writs of mandamus and prohibition shall lie from the supreme court to the Commission in all cases where such writs respectively would lie to any in-

ferior court or officer,' appears to have no application here. The challenge of a prescribed rate as being confiscatory raises a question not as to the scope of the Commission's authority, but of the correctness of the exercise of its judgment."

In *Railroad Commissioners, supra,* the Court stated as follows:

"The action which may be restrained by the writ of prohibition must be judicial or *quasi*-judicial in its nature. The writ will not lie to prevent officers or tribunals from acting where such action is not judicial in its nature.

\* \* \*

"In fixing rates to be charged by railroad common carriers for transporting persons and property, the railroad commissioners exercise a *quasi*-legislative function sometimes regarded as being administrative, but not judicial in its nature."

In *Oklahoma Gas, supra,* the Court stated as follows:

"The order was issued on April 13, 1926, under No. 3388, and purported to reduce the rate of charges on natural gas then being supplied to Wilson & Company by Oklahoma Gas & Electric Company.

\* \* \*

"And prohibition is directed only to inferior courts or to officers exercising judicial or *quasi* judicial powers. The writ is to prohibit the exercise of unauthorized or excessive judicial force. *Schuman v. Sternberg,* 179 Okl. 118, 65 P. (2d) 413. The commission was not exercising judicial or *quasi*-judicial powers when it promulgated order No. 3388."

It seems clear that the Writ of Prohibition will not lie to prohibit Respondent from performing a particular function unless it is a judicial or *quasi*-judicial function. Our Supreme Court has not considered the nature of rate making; however, its nature has been considered by numerous State and Federal Courts and such Courts have consistently held

that rate making is a legislative function. In addition to *Spring Valley, Oklahoma Operating Company, Railroad Commissioners,* and *Oklahoma Gas, supra,* see the authorities hereafter cited.

"Other legislative powers include the control of finances of the government, the discharge of legal or equitable obligations of the state, the regulation of public utilities, the regulation of rates of railroads and other public service corporations, * * *" 16 C. J. S. Constitutional Law § 107, page 494.

"The fixing of railroad and other public utility rates is a legislative function, whether exercised by the legislature directly or by an administrative body under delegated authority; * * *" 16 C. J. S. Constitutional Law § 198, page 969.

"It has been held that rate making is not a judicial function, as discussed in Constitutional Law § 144, but is a legislative one, whether exercised by the legislature directly or by an administrative body under delegated authority, although subject to review by the courts as to the legality and reasonableness of its exercise, as considered in Constitutional Law § 198. It operates prospectively, and necessarily implies a range of legislative discretion; and ordinarily the legislative determination within the scope of such discretion is conclusive." 73 C. J. S. Public Utilities § 16, Page 1012.

Additional decisions holding that rate making is a legislative function are as follows: Insurance Rate Decisions— *Red Arrow Freight Lines, Inc. v. American Fidelity & Casualty Co.,* Tex. Civ. App., 225 S. W. (2d) 240, 242 (1949); *In re* North Carolina Fire Insurance Rating Bureau, 275 N. C. 15, 165 S. E. (2d) 207, 219 (1969); and *Carroll v. Barnes, Insurance Commissioner, Colo.* 455 P. (2d) 644, 646, 647 and 648 (1969). Public Utility Rate Decisions—*Georgia Public Service Commission, et al. v. Atlanta Gas Light Co.,* 205 Ga. 863, 55 S. E. (2d) 618, 630 (1949); *State ex rel. Utilities Commission v. State,*

239 N. C. 333, 80 S. E. (2d) 133, 140 (1954); *Washington Holding Corporation v. County Utilities Corporation,* 207 Va. 729, 152 S. E. (2d) 50, 54 (1967); *Washington Gas Light Company v. Byrnes, Director of Economic Stabilization,* 78 U. S. App. D. C. 107, 137 F. (2d) 547, 559 (1943); *McTighe v. New England Telephone & Telegraph Co.,* 2 Cir., 216 F. (2d) 26, 29 (1954); and *Public Utilities Commission of the State of California v. United States,* 9 Cir., 356 F. (2d) 236, 241 (1966).

In *American Fidelity, supra,* the Court stated as follows:

"It is necessary in passing on these questions to distinguish between the authority of the Board of Insurance Commissioners as to rate making which is legislative in character and governed by all the limitations applicable to legislation, and rate application which is open to review and change at all times, as to past or present mistakes, if any have been made."

In *North Carolina Fire Insurance Rating Bureau, supra,* the Court stated as follows:

"In fixing by law the premium rate, it is the legislative power of the State which is being exercised."

In *Barnes, Insurance Commissioner, supra,* the Court stated as follows:

"Rate making is essentially a legislative function. *Colorado Interstate Gas Company v. Federal Power Commission,* 324 U. S. 581, 65 S. Ct. 829, 89 L. Ed. 1206; 1 Am. Jur. (2d) Administrative Law § 129. The delegation of the rate making function to administrative agencies has long been recognized as a valid delegation of legislative power where standards and guidelines have been promulgated within which such powers are to be exercised. *Hirabayashi v. United States,* 320 U. S. 81, 63 S. Ct. 1375, 87 L. Ed. 1774; *Morgan v. United States,* 304 U. S. 1, 58 S. Ct. 773, 82 L. Ed. 1129. The distinction has been made that the making of rates for the future is legislative, whereas determining the unreasonableness of existing rates or the

making of an award for the exaction of an unreasonable rate is adjudicatory. *When the making of rates for the future is delegated to an administrative agency, it functions in a quasi-legislative capacity. Interstate Commerce Commission v. United States, [ex rel. Campbell], 289 U. S. 385, 53 S. Ct. 607, 77 L. Ed. 1273; Arizona Grocery Company v. Atchinson, T. & S. F. R. Co., 284 U. S. 370, 52 S. Ct. 183, 76 L. Ed. 348; Ohio Valley Water Co. v. Borough of Ben Avon, 253 U. S. 287, 40 S. Ct. 527, 64 L. Ed. 908.* (Emphasis Added.)

\* \* \*

*"We hold that when the commissioner of insurance conducts a hearing, either on his own initiative or at the request of a filing insurer or rating organization, prior to approval or disapproval by him of the rate filing, he is functioning in a quasi-legislative capacity and the validity of the procedures which he follows is not to be determined by the standards provided in C. R. S. 1963, 3-16-1 to 3-16-6 (Administrative Code)."* (Emphasis Added.)

Accordingly it seems clear that the Respondent's approval of an increase in automobile liability insurance rates is not a judicial or *quasi*-judicial function, but that such approval is a *quasi*-legislative function. Therefore I feel it is clear that the Writ sought here will not lie.

But assuming such approval were a judicial or quasi-judicial function, I feel it is also clear that the Writ sought here would not lie since the alleged ground therefor is abuse of discretion which is not a ground for the issuance of the Writ. See the South Carolina decision in *Jones, supra,* and the United States Supreme Court decision in *Oklahoma Operating Company, supra,* where such Court stated "The challenge of a prescribed rate as being confiscatory raises a question not as to the scope of the Commission's authority, but of the correctness of the exercise of its judgment." Our Supreme Court has repeatedly said that abuse of discretion merely means an error of law—without

any reflection on the lower Court or tribunal. See *McCauley v. Query, et al., Tax Commission,* 193 S. C. 1, 7 S. E. (2d) 519, 521 (1940). Also see *Bridges v. Wayndotte Worsted Company,* 239 S. C. 37, 121 S. E. (2d) 300, 302 (1961) and *South Carolina State Highway Department v. Sharpe,* 242 S. C. 397, 131 S. E. (2d) 257, 259 (1963). *Jones* and the cases cited therein clearly state that the Writ will not lie under any circumstances to prevent an erroneous decision. In particular see *Holladay v. Hodge, supra.*

Assuming, however, that such approval of an increase in rates were a judicial or *quasi*-judicial function and that a valid ground for the Writ were alleged, I feel it is equally clear that the Writ sought here would not lie in view of the adequate and applicable statutory review provisions to wit: Section 37-701—Sections 37-70 through 37-74—and Section 46-719. There is no allegation that any Petitioner has ever sought a review of any decision of Respondent as provided by the cited statutes or that any of such statutes do not provide Petitioners with adequate relief. In my view these statutes are clear and afford any aggrieved person a simple and adequate remedy for review of any decision of the Respondent. See *Lominick v. City of Aiken,* 244 S. C. 32, 135, S. E. (2d) 305, 310 (1964) and *Pullman Company v. Public Service Commission,* 234 S. C. 365, 108 S. E. (2d) 571 (1959) in connection with the exhaustion of administrative remedies by a party before he can seek redress in the courts where, as here, such party does not challenge the authority or jurisdiction of the agency or officer. Here the only allegation is "abuse of discretion."