HARKER v. BUSHOUSE.

1. MOTOR VEHICLES—VOIR DIRE EXAMINATION—INSURANCE—JURIES.
   In action for injuries received in automobile accident, unless question of insurance is brought into case on *voir dire* for purpose of influencing jury, it is not reversible error.

2. SAME—GOOD FAITH.
   Error will result if question in regard to insurance is not asked in good faith.

3. CONSTITUTIONAL LAW—STATUTES—CONSTITUTIONAL JUDICIAL POWER MAY NOT BE INTERFERED WITH.
   The legislature may not interfere with the judicial power vested in courts by State Constitution.

4. SAME—INSURANCE—MOTOR VEHICLES.
   In so far as subdivision 6, § 33, chap. 2, pt. 3, Act No. 154, Pub. Acts 1929, prohibiting any reference to insurance in action at law for damages, attempts to control judicial power, it is void, since naming insurance company may become necessary on *voir dire*.

5. MOTOR VEHICLES—VOIR DIRE EXAMINATION—JURIES—INSURANCE.
   In action for injuries received in automobile accident, plaintiff has right to ascertain on *voir dire* whether any members of jury belong to mutual automobile insurance company in which defendant is insured, but proper method of interrogating jury should be followed.

6. SAME—APPEAL AND ERROR.
   Interrogating jury on *voir dire* as to whether they were members of mutual automobile insurance company was not error, where question was propounded in correct form, there was no studied effort to repeat it, and question of insurance was not again referred to during trial.

7. SAME—EVIDENCE—CONSEQUENTIAL DAMAGES—CONSORTIUM.
   In action for injuries received in automobile accident, admission of evidence tending to show that plaintiff lost his home and the society and companionship of his wife as result of his injuries was error, where no consequential damages were set forth in declaration.

On right of husband to recover for loss of consortium through personal injury to wife, see annotation in 33 L. R. A. (N. S.) 1042; L. R. A. 1915D, 524.

8. HUSBAND AND WIFE—CONSORTIUM.
   Since the passage of married woman's act, neither husband nor wife may recover for loss of consortium in this State.

9. EVIDENCE—PERSONAL INJURIES—NEGLIGENCE—APPEAL AND ERROR.
   In personal injury case, evidence as to immaterial and collateral matters which tends to show plaintiff's poverty and enlist sympathy of jury should be excluded.

10. APPEAL AND ERROR—HARMLESS ERROR.
    Where record shows that verdict was not enhanced by admission of improper testimony, judgment is affirmed, although it would have been reversed had it been for unduly large amount.

Error to Kalamazoo; Weimer (George V.), J. Submitted January 23, 1931. (Docket No. 118, Calendar No. 35,323.) Decided April 23, 1931.

Case by Paul Harker against John Bushouse and another for personal injuries received when struck by defendant's automobile. Judgment for plaintiff. Defendants bring error. Affirmed.

*Frank F. Ford,* for plaintiff.

*Jackson, Fitzgerald & Dalm* (*Pulver & Bush,* of counsel), for defendants.

BUTZEL, C. J. Plaintiff for over 20 years had been engaged in selling shirts, hosiery, and underwear, etc., to his customers at their respective homes and offices in the city of Kalamazoo. His earnings amounted to $1,300 a year.

Shortly after dark on the afternoon of February 6, 1929, upon alighting from a street car on his way home, at the corner of Westnedge avenue and Walnut street, plaintiff claims he looked in both directions before proceeding from the street car tracks to the sidewalk. As he was nearing the curb, he was struck by an automobile belonging to de-

fendant John Bushouse and driven by his 17-year old son, defendant Isa Paul Bushouse. According to the record, there seems to be but little doubt that plaintiff's injuries were sustained through the negligence of defendants. It was admitted that the car was old and the lights so dim that the driver could not see over 60 feet ahead. The brakes were applied, but failed to work properly. This was due to the speed at which the car was driven over the pavement, covered with ice. No contributory negligence was shown on the part of plaintiff. The jury rendered a verdict of $5,000 in his favor.

Questions of the admissibility of the evidence are solely presented in the assignments of error. It is claimed that the answers to improper questions, timely objected to, affected the verdict. Plaintiff at the time of the accident was 75 years of age. He was suffering from some infirmities, including a disability and stiffening of the hip joints, slowness of locomotion and then at times only with the aid of a cane. Nevertheless his general health was otherwise good and he was able each day to go about unassisted and walk a long distance in order to visit his customers. The record leaves little doubt as to the seriousness, painfulness, and permanency of his injuries. Several ribs were broken and his arm and wrist badly injured. He sustained compound comminuted fractures of both bones of the right leg just below the knee, and also other serious injuries resulting therefrom. He remained at the hospital for over five months, during a large part of which time he suffered very acute pain. In addition to the Roentgenologists, three physicians testified that plaintiff's condition was very serious. Two of them examined him shortly before the trial, almost a year after the date of the accident. They found that he was permanently disabled. At the time of the trial

he was only able with the aid of crutches to move about the floor of the house in which he lived. He needed the support of others to get about. He required help to dress and undress. His right hand has only about one-tenth of its former grip, due to the injury to the muscolo-spinal nerve. This may affect his use of crutches. The fracture of two ribs still caused him pain upon deep respiration or coughing. His right leg had almost ceased to function. It was very purple and swollen from the toes to the knee. The ankle joint could scarcely be moved and the leg seemed almost lifeless. The medical testimony indicates that amputation may become necessary. There is little doubt that plaintiff will continue to suffer severe discomforts, painful attacks, and possibly more serious consequences from his injuries. His earning capacity appears to be ended. The testimony shows that at the time of the trial his expectancy was 5.88 years. If the $1,300 he would have earned from the time of the accident up to that of trial, together with $759.42, the amount of the medical bills and hospital expenses, be added to the present worth of the expectancy, his financial loss would amount to $8,000 or thereabouts. This does not include any compensation for the extreme pain and suffering he endured and which may continue in an undetermined degree.

Defendants ask for reversal on two assignments of error, and that they be considered both separately and together so that if there is insufficiency in one, it may be supplemented by the other.

Upon the *voir dire,* the jury was asked whether they were members of the Citizens Mutual Insurance Company of Howell, Michigan. The question was at first improperly framed, but, after objection, propounded in correct form. There was no studied

effort to repeat it nor was the question of insurance again referred to during the trial. It is unfortunate that the question of insurance should arise so frequently in trials of negligence cases. Undoubtedly the question may be a very important one. It is well known that many automobile drivers carry liability insurance. Some companies in the conduct of their large businesses have many officers and employees, some of whom may be summoned for jury service. Shares of stock in some of the companies may be held by potential members of a jury. Mutual companies do a very large business and members thereof may be interested in the outcome of a case in which their company may be the real, though not the nominal, defendant. We have held in previous cases that if the question of insurance is not brought into the case on the *voir dire* examination for the purpose of influencing a jury, it is not reversible error. The entire question depends upon the good faith of counsel. *Church* v. *Stoldt,* 215 Mich. 469; *Reynolds* v. *Knowles,* 223 Mich. 70; *Morris* v. *Montgomery,* 229 Mich. 509; *Sutzer* v. *Allen,* 236 Mich. 1; *Oliver* v. *Ashworth,* 239 Mich. 53. It, however, will result in error if a question in regard to insurance is not asked in good faith but for the purpose of inflaming or prejudicing the minds of the jury. *Holman* v. *Cole,* 242 Mich. 402; *Palazzolo* v. *Sackett,* 245 Mich. 97.

Subdivision 6, § 33, chap. 2, pt. 3, Act No. 154, Pub. Acts 1929 (3 Comp. Laws 1929, § 12460), refers to provisions required in certain policies. Beginning with the twenty-second line of this section, it is provided as follows:

"In such original action, such insurance company, or other insurer, shall not be made, or joined as a party defendant, nor shall any reference whatever

be made to such an insurance company, or other insurer, or to the question of carrying of such insurance during the course of trial.''

We need not discuss the constitutional objection raised that this quoted provision is in no way referred to in the title of the act, nor need we consider whether it applies to the present case. We have repeatedly held that the legislature may not interfere with the judicial power vested in the courts by the Constitution of this State. *People, ex rel. Atty. General,* v. *Holschuh,* 235 Mich. 272; *Bielecki* v. *United Trucking Service,* 247 Mich. 661; *People* v. *McMurchy,* 249 Mich. 147. The quoted provision as far as it attempts to control judicial power is void. The naming of an insurance company may become necessary on the *voir dire.* It would be better not to name it, and thus avoid the suspicion that it was done for the purpose of influencing or prejudicing the jury.

While we realize that in the present case the jury might have concluded from the question objected to that the Citizens Mutual Insurance Company of Howell, Michigan, was the real party defendant, we also are fully appreciative of the fact that plaintiff should have the right of inquiry to ascertain on the *voir dire* whether any members of the jury belonged to this organization. Had the question of insurance been further stressed, there would have been error which we could not overlook. While we are constrained to hold that there was no error in asking the question on the *voir dire,* we nevertheless again call attention of counsel to the case of *Holman* v. *Cole, supra,* where a proper method of interrogating the jury in regard to insurance on the *voir dire* is set forth. We also might suggest to the trial judges who so frequently examine the jury on the

*voir dire,* that they might make a brief statement calling attention to the fact that some automobile drivers do and others do not carry insurance; that under no circumstances should it make any difference whatever as to the outcome of the case whether such insurance is carried or not; that the judge asks the question about to be put in every negligence case, and that he does not know, nor does the asking of the question signify, whether defendant carried insurance; that the law does not permit any further reference to be made to the subject during the trial of the case, but that the plaintiff has a right to know whether any of the members of the jury are officers, employees, or stockholders in any insurance company or members of any mutual insurance company. If, after asking the question, the answer is in the affirmative, further questions may follow and challenges made, if desired. If it is in the negative, the question is disposed of with finality. Such an action on the part of the trial judges should result in the further exclusion of all reference to insurance under penalty of a reversal of the case should counsel persist in again purposely referring to it. We do not believe that there was any error in permitting the question as propounded in the present case, though it might have led to difficulty if further referred to. As a rule there is no necessity of naming an insurance company.

The second assignment of error relates to the admission of testimony, as follows:

"*Q.* Now, after this accident, did you give up your home on Walnut Street?
"*A.* Yes sir.
"*Mr. Fitzgerald:* I object to that as immaterial and irrelevant. I suppose he was in the hospital as far as that is concerned.

"*Mr. Ford:* Well, we shall claim damages that this plaintiff has given up his home. He hasn't lived with his wife. It was a necessary result of this accident. He has been deprived of earnings. He has been unable to provide a home.

"*The Court:* You may take it.

"*Mr. Ford:* The court said you may answer that question. Read it, Mr. Reporter.

"*Mr. Fitzgerald:* I suggest that the loss of earnings, if such is the case, is quite a different thing from somebody else losing a home, or not having the accommodations—

"*The Court:* As I understand, physical pain and suffering, any inconvenience or annoyance, Mr. Fitzgerald, entailed by it.

"*Mr. Fitzgerald:* Of course, on the other angle, he is asking compensation for hospital bills, services for being taken care of. He ought not to be allowed both of them.

"*The Court:* Well, I suppose Mr. Ford has reference to the period since he left the hospital. I take it that is the purpose of this inquiry.

"*Mr. Ford:* Well, I didn't limit it to that. To be perfectly frank, my question—immediately after this accident and as a result of it.

"*The Court:* He went to the hospital.

"*Mr. Ford:* He went to the hospital, and by reason of his having no earnings since, he has had no home. A man can't have a home without earnings.

"*The Court:* Well, proceed.

"*Mr. Ford:* Read the question, Mr. Stenographer.

"(Question and answer read.)

"*The Court:* It may stand.

"*Q.* What was done with your household goods, Mr. Harker?

"*A.* We sold some of them.

"*Mr. Fitzgerald:* I object to that. May the objection also apply to that?

"*The Court:* I think the objection to this should be sustained. I don't see how this enters into any element of damages.

"*Q.* Have you lived with your daughter ever since this accident?

"*The Court:* He has already answered that. ·

"*Q.* Where has your wife been since the accident?

"*Mr. Fitzgerald:* I want to object to that as immaterial, irrelevant, and incompetent.

"*The Court:* You may take it.

"*A.* Part of the time, while I was in the hospital, my wife was with my daughter, but since I came out, she has been with my son at Milford, Michigan, near Pontiac."

This testimony was highly improper. When the answers to the questions objected to are considered in connection with the remarks interpolated by counsel and the answer given before an objection could be made, the jury necessarily were impressed with plaintiff's claim that the loss of his home, and the society and companionship of his wife resulted from his injuries. No consequential damages were set forth in plaintiff's declaration. Since the passage of the married woman's act, neither husband or wife may recover for the loss of consortium in this State. *Blair* v. *Seitner Dry Goods Co.,* 184 Mich. 304 (L. R. A. 1915 D, 524, Ann. Cas. 1916 C, 882). The evidence further tends to show plaintiff's poverty and thus enlists the sympathy of the jury. In an action for personal injuries, testimony as to such immaterial and collateral matters should be excluded, and particularly so if their sole purpose is to enlist the sympathy of the jury and affect the legitimate measure of damages. *McKormick* v. *City of West Bay City,* 110 Mich. 265; *Mortensen* v. *Brad-*

*shaw*, 188 Mich. 436; *Haynes v. Clark*, 252 Mich. 295; *Pennsylvania Co. v. Roy*, 102 U. S. 451.

There was error in not excluding the testimony hereinbefore quoted. Defendants, however, made no requests to charge so as to undo any harm that might have resulted. The improper testimony did not affect the general result of the trial for the negligence was proven beyond any question. The sole question before us is whether the admission of this improper testimony enhanced the amount of the verdict. Were it for an unduly large amount, we would set it aside. *Holman v. Cole, supra.*

In denying the motion for a new trial, the trial judge stated, in answer to the two assignments of error:

"Respecting the amount of the verdict, plaintiff's injuries were so serious, his suffering so constant and so great and of such duration, his expenses so large, his fixed, definite earning capacity so entirely destroyed; in fact, the resulting damages were so pronounced and undisputed. that we do not need to look further to account for the amount of the verdict. On the question of damages the case was lopsided, so overwhelming was the testimony and so wholly undisputed. There is no occasion for any alarm that the *voir dire* examination or that that portion of plaintiff's testimony of which complaint is here made may have enhanced the verdict."

A careful reading of the record convinces us that the amount of the verdict was not enhanced by the improper testimony. It is wholly supported by proper evidence. For this reason alone, we affirm the judgment, with costs.

WIEST, CLARK, MCDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.