## MONTGOMERY *v.* STEPHAN.

1. WORDS AND PHRASES—CONSORTIUM.
   "Consortium" means conjugal fellowship.

2. JUDGES—JUSTICE OF THE SUPREME COURT.
   The oath of a justice of the Supreme Court is to do justice, not to perpetuate error.

3. COURTS—PRECEDENTS—EQUALITY OF SEXES.
   Decisions founded upon the assumption of a bygone inequality between the sexes are unrelated to present-day realities and ought not to be permitted to prescribe a rule of life where social, political, and legal reforms have changed the relations between the sexes and put woman and man upon a plane of equality.

4. HUSBAND AND WIFE—LOSS OF CONSORTIUM—ACTION BY WIFE.
   A wife's action against a tort-feasor for loss of consortium is an action for damages to her own interest, not a remote consequence of the tort-feasor's injury to the husband.

5. SAME—LOSS OF CONSORTIUM—DOUBLE RECOVERY.
   Recovery by plaintiff wife in her action against a tort-feasor, who injured her husband, for loss of consortium may not be defeated on the ground of danger of allowing a double recovery to the husband.

6. SAME—CONSORTIUM—PLEADING.
   The legal concept of "consortium" is incapable of dismemberment into material services and sentimental services, hence, there

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  26 Am Jur, Husband and Wife § 5.
[2, 3]  14 Am Jur, Courts § 125.
[4, 5]  27 Am Jur, Husband and Wife §§ 513, 514.
  Wife's right of action for loss of consortium.    23 ALR2d 1378.
[6]  27 Am Jur, Husband and Wife § 512.
[7, 9]  27 Am Jur, Husband and Wife § 604.
[8]  52 Am Jur, Torts § 45 *et seq.*
[10]  27 Am Jur, Husband and Wife § 514.

need be no allegation of the loss of any particular "element" thereof.

7. SAME—COMMON LAW DISABILITY OF WIFE.
   The concept of the early common law that the wife was inferior to the husband in her capacity to sue for damages to her separate interest has been repudiated.

8. DAMAGES—INTERESTS OF PERSONALITY.
   The law protects interests of personality as well as the physical integrity of the person.

9. HUSBAND AND WIFE—PROTECTION OF A FAMILY.
   Relief is extended to the wife against a tort-feasor, negligent or intentional, in order to protect the family as a social unit.

10. SAME—LOSS OF CONSORTIUM—PLEADING.
    Wife who alleged facts showing injury to her husband of such character as to result in her loss of consortium by reason of negligence of defendant tort-feasor *held*, to have pleaded a cause of action.

DETHMERS, C. J., and CARR and KELLY, JJ., dissenting.

Appeal from Wayne; Weideman (Carl M.), J. Submitted October 7, 1959. (Docket No. 16, Calendar No. 48,134.) Decided February 25, 1960.

Case by Shirley Montgomery against William S. Stephan for damages based solely upon loss of consortium of her husband who suffered severe internal and brain injuries in automobile collision. Declaration dismissed on motion. Plaintiff appeals. Reversed and remanded.

*Louis L. Welner,* for plaintiff.

*Carl F. Davidson,* for defendant.

*Amicus Curiae:*

*Hart & Gold* (*Arnold M. Gold,* of counsel).

SMITH, J.  The action before us is brought by a wife.  She tells us[1] that the defendant was driving his car in a reckless manner and in so doing struck her husband's car at a time when her husband, driving with care and caution, was almost completely across an intersection.  As a result of such impact her husband's car was driven against a tree, embedding the bark thereof in his head.  He suffered brain concussion which may develop into epilepsy, he lost the voluntary functioning of his kidneys, he sustained 4 fractures of the pelvis, a puncture of the abdomen, and other severe injuries.  We could go on for some time but need not.  Some of the injuries may be repaired, at least after a fashion, and others may not.

She is suing for damages for none of these.  Her cause of action involves a hurt directly to her, equally obvious, she says, equally disastrous, and equally deserving of the protection of the law.  She says, in effect, that the negligence of the defendant has reduced her husband to a physical and psychological wreck, a mere shell of manhood, unable to sleep, unable to work effectively, in constant pain, scared, worried constantly, physically weak, and unable to enjoy even normal social life.  She asserts that she has been deprived of her husband's society and comfort, of his aid and companionship, and of normal conjugal affection.

The legal term for her asserted loss is that of "consortium."  It has been variously defined, sometimes in terms enormously complex as the judges followed the habit of lawyers of never using 1 word where 2 may be employed.  One of the most careful of the studies of consortium, in fact, attributes to the redundancies of common-law pleading much of

---

[1] We get the case upon the lower court's grant of defendant's motion to dismiss the declaration upon the ground that it stated no cause of action under Michigan law.

the confusion and injustice prevalent in this field.[2] Actually, all that consortium means is conjugal fellowship.[3] But the pleader at the common law (following his practice in deeds, wills, contracts, and what-not) alleged the loss of love, companionship, affection, society, comfort, sexual relations, services, solace, and or and on until his dictionary ran dry. It does, indeed (since it is fellowship between man and wife), embrace all of these things, and more. But the verbosities of common-law pleading should not lead the court to absurdities, such as the conclusion, for instance, that consortium has an economic side, for loss of which one may recover, and a sentimental side, for loss of which no recovery may be had.[4] What of the spiritual side? The parental side? The carnal side? It would be a reckless semanticist who would assert that he was able, justifiably, to place each of the various elements of conjugal fellowship in one or the other of the suggested pigeonholes, just as it would be a bold artist who would assert that he could categorize all of the hues of the spectrum into 2 pigeonholes, one marked "light," the other marked "dark." Such efforts may be amusing as mental exercises, but when judges seriously put them forward as grounds for decision, absurdities will result and injustice is bound to be done.

The wife before us, then, seeks recovery for her loss of consortium. To this the trial court replied that, legally speaking, she had not suffered a loss. So it is that she comes to us. The precedents do, indeed, deny her recovery. The husband, it is usually said, may recover for loss of consortium, but not the

---

[2] Lippman, The Breakdown of Consortium, 30 Columbia L Rev 651, 668.

[3] Bouvier, Law Dictionary (3d rev), *Consortium.*

[4] See *Golden* v. *R. L. Greene Paper Co.*, 44 RI 231 (116 A 579, 21 ALR 1514). *Cf. Blair* v. *Seitner Dry Goods Co.*, 184 Mich 304 (LRA 1915D, 524, Ann Cas 1916C, 882).

wife. This is nothing short of ridiculous. If one of the marriage partners may recover for loss of consortium, why may not the other? If the family larder is empty, does only one hunger? They stood together at the altar and jointly they entered into their conjugal relationship. They assumed commensurate rights, duties, and responsibilities. Where, along the line, did it all become one-sided, so that the law will grant recompense to one, on the theory that he has suffered a loss, but not to the other?

These precedents are venerable. Their chains may be moss-encrusted and rusty but only a few courts have held that they no longer control or confine.[5] Thus again we reach the conflict that divides us, for the law, as Dean Pound put it, must be stable, and yet it cannot stand still. Were we to rule upon precedent alone, were stability the only reason for our being, we would have no trouble with this case. We would simply tell the woman to begone, and to take her shattered husband with her, that we need no longer be affronted by a sight so repulsive. In

[5] See *Hitaffer* v. *Argonne Co., Inc.*, 87 App DC 57 (183 F2d 811, 23 ALR2d 1366); *Cooney* v. *Moomaw*, 109 F Supp 448; *Missouri Pacific Transportation Co.* v. *Miller*, 227 Ark 351 (299 SW2d 41); *Brown* v. *Georgia-Tennessee Coaches, Inc.*, 88 Ga App 519 (77 SE2d 24); *Acuff* v. *Schmit*, 248 Iowa 272 (78 NW2d 480); *Hipp* v. *E. I. Dupont de Nemours & Co.*, 182 NC 9 (108 SE 318, 18 ALR 873), later overruled in *Hinnant* v. *Tidewater Power Co.*, 189 NC 120 (126 SE 307, 37 ALR 889); *Hoekstra* v. *Helgeland*, 78 SD — (98 NW2d 669). Also of interest are the opinions in *McDade* v. *West*, 80 Ga App 481 (56 SE2d 299) (evenly divided); *Burk* v. *Anderson*, 232 Ind 77 (109 NE2d 407); *Bernhardt* v. *Perry*, 276 Mo 612, 632 (208 SW 462, 13 ALR 1320) (dissenting opinion); *Landwehr* v. *Barbas*, 241 App Div 769 (270 NYS 534) (dissenting opinion), aff'd, 270 NY 537 (200 NE 306).

Comment in texts and law reviews has favored almost unanimously recovery by a wife for loss of consortium. See, in particular, 1 Harper and James, Torts, § 8.9; Prosser, Torts (2d ed), § 104; Fridman, Consortium as an "Interest" in the Law of Torts, 32 Can B Rev 1065; Holbrook, The Change in the Meaning of Consortium, 22 Mich L Rev 1; Lippman, The Breakdown of Consortium, 30 Columbia L Rev 651; Simcone, The Wife's Action for Loss of Consortium—Progress or No?, 4 St. Louis U LJ 424.

so doing we would have vast support from the dusty books. But dust the decision would remain in our mouths through the years ahead, a reproach to law and conscience alike. Our oath is to do justice, not to perpetuate error.

. Is the holding that recovery be denied, in truth the demand of the common law? If so, and the vast amount of authority so saying bears witness thereof, there must, one day, have been reasons for the rule, for, as Holmes tells us, the common law has grown by an historical process.[6]

The reasons, then, we seek in the period of time in which the monstrous doctrine had its origin. The status of the wife and mother at this time is made clear in the periodical rulings of the time. She was part chattel, part servant. As we observed in a concurring opinion in an earlier case, *Sovereign* v. *Sovereign,* 354 Mich 65, 73, 74:

"The picture we receive, sketchy as it is, of late 16th and early 17th century women is, by today's standards, a depressing one. She was regarded as a creature (the choice of words is not our own) of limited intellectual attainments or possibilities. Education was largely denied her. There were few schools for even the girls of the wealthier families and the training given in those was limited to that of a 'polishing nature, music and the arts.' There was almost no opportunity for the rigorous intellectual discipline given to young men. They were married young, pawns in their father's hands for

---

. 6 Holmes, The Common Law p 5:

"The customs, beliefs, or needs of a primitive time establish a rule or a formula. In the course of centuries the customs, belief, or necessity disappear, but the rule remains. The reason which gave rise to the rule has been forgotten, and ingenious minds set themselves to inquire how it is to be accounted for. Some ground of policy is thought of, which seems to explain it and to reconcile it with the present state of things; and then the rule adapts itself to the new reasons which have been found for it, and centers on a new career. The old form receives a new content, and in time even the form modifies itself to fit the meaning which it has received."

the attainment of title or prestige. They could not possibly hope to reach, in fact, they were not 'meant' to reach, intellectual equality with their husbands. Their existence, socially and economically, pivoted around that of a dominant husband, authoritarian and paternalistic."

With respect to the children of the marriage the husband's so-called rights were near absolute. Although we find no case paralleling the early Roman law, under which the *pater familias* had the power to sell his child in the open market, or put it to death,[7] it was clear that the English father might effectively prevent the mother's access to her child during his life,[8] and even after his death maintain the bar with statutory sanction.

Such being the mother's "rights" with respect to her children it follows, with the relentless logic of the common law, that her rights respecting her property and her person are no more generous. She was his chattel. What was hers, was his. The wife, says Bracton,[9] "has nothing which is not her husband's." They were one, and, as one opinion put it,[0] he was that one. All of her personal property, money, goods, and chattels of every description, became his upon marriage.[1] Since she was "under the power of her husband," it followed that she had "no will of her own" and having no will of her own could not enter into a contract.[2] Of course, he was entitled to her services in the home as he would be to those of any servant in his employ. Should he lose them through the acts of another that other must respond in damages.[3] But should the husband be

---

[7] Hunter, Introduction to Roman Law (9th ed 1934), p 30.

[8] *Ball* v. *Ball*, 2 Sim 35 (57 Eng Rep 703).

[9] 5 Bracton, DeLegibus (Twiss ed 1878), p 423.

[0] *Acuff* v. *Schmit*, 248 Iowa 272, 278 (78 NW2d 480, 484). See, also, Casner & Leach, Cases on Property, p 283.

[1] 2 Blackstone, Commentaries, *433–*436.

[2] 1 Bishop, Married Women (1873 ed), § 39.

[3] *Hyde* v. *Scyssor*, Cro Jac (2 Cro) 538 (79 Eng Rep 462); *Guy* v.

injured, and she thus lose his protection and solace, might she, equally with him, maintain a like suit for her loss? In light of what has been said the question is nonsensical. To have a lawsuit we must have, to start with, someone capable of suing another. She, however, could not bring any action in her own name, for she was a legal nonentity.[4] But this was not all. What if she were so injured by another as to be incapable of performing her wifely duties? Has the husband suffered a legally recognizable loss, so that he might cause that other to respond in damages? The answer is clear from the common law, as is the theory upon which it was based. He had. It was an actionable trespass for one to interfere with the services of another's servant.[5] This menial in the house, this chattel, responding to the term "wife," also rendered services. It would follow, and it did follow, that the husband had a right of action for injury to her, grounded upon the theory that she was his servant.[6] But could she sue a wrongdoer for injury to him? A servant sue for the loss of services of the master? Clearly not. If authority is needed for reply, Blackstone[7] supplies it:

"One reason for which may be this: that the inferior hath no kind of property in the company, care, or assistance of the superior, as the superior is held to have in those of the inferior; and therefore the inferior can suffer no loss or injury."

This, then, is the soil in which the doctrine took root; the abject subservience of wife to husband, her legal nonexistence, her degraded position as a

Livesey, Cro Jac (2 Cro) 501 (79 Eng Rep 428); 8 Holdsworth, A History of English Law (2d ed 1937), pp 429, 430.

4 1 Blackstone, Commentaries, *442.

5 Hodsoll v. Stallebrass, 11 Ad & E 301 (113 Eng Rep 429); Robert Marys's Case, 9 Co Rep 111b, 113a (77 Eng Rep 895, 898, 899).

6 See Lippman, The Breakdown of Consortium, 30 Columbia L Rev 651, 653.

7 3 Blackstone, Commentaries, *142, *143.

combination vessel, chattel, and household drudge whose obedience might be enforced by personal chastisement. Such being the case we need not cite authority to the proposition that the husband might at the common law, and may today, in the vast majority of jurisdictions, sue for injury to or loss by his wife's services, affection, and companionship. But may a wife sue for loss of consortium? The modern answer, as well as the ancient, is that she may not. The abundance of the cases so holding is a monument to blind adherence to worn-out precedent, a stubborn, dogged refusal to recognize that, as Cardozo once wrote, "Social, political, and legal reforms [have] changed the relations between the sexes, and put woman and man upon a plane of equality. Decisions founded upon the assumption of a bygone inequality are unrelated to present-day realities, and ought not to be permitted to prescribe a rule of life."[8]

Any attempt to pursue the manifold reasons offered up by modern courts for their refusals to permit the wife a recovery for her loss of consortium takes us on a tour similar to that of Minos in labyrinth of Daedalus. Each path leads to a dead end of reasoning and logic. Thus it is said that the injury suffered by the wife is too remote a consequence of defendant's act to be made the subject of an action.[9] Yet even if the proximate cause argument is valid, which is questionable, *Hitaffer v. Argonne Co., Inc.,* 87 App DC 57 (183 F2d 811, 23 ALR2d 1366), injury to the same interest has never been regarded as too remote when the husband sues for his reciprocal loss. See 21 ALR 1517. It is said,

---

[8] Cardozo, The Growth of the Law, pp 105, 106.
[9] *Feneff* v. *New York Central & H. R. R. Co.,* 203 Mass 278 (89 NE 436, 24 LRA NS 1024, 133 Am St Rep 291), relied upon in *Blair* v. *Seitner Dry Goods Co.,* 184 Mich 304 (LRA 1915D, 524, Ann Cas 1916C, 882).

moreover, that there is danger of double recovery, since the husband recovers for his diminished ability to support, and he is under a duty to support his wife. This merely sidesteps the issue. The wife is suing for damages to her interest. She does not seek recovery for loss of support. Her effort is to recover for loss of companionship and of society. Moreover, here again we see the paradox before noted, the peculiar reasoning that sets up (as insuperable obstacles to the action of the wife) objections deemed completely immaterial when the husband sues for damage to the same interest. We have just noted it with respect to the problems of remoteness. Here we see it with respect to double recovery, for the husband has consistently been permitted to recover for loss of consortium. Yet, insofar as material services are included within the concept of consortium (and there is no doubt they form a part of the whole), it cannot be denied that there is a danger of allowing him a double recovery. This danger, however, has never been thought sufficiently real to bar the husband's action for loss of his consortium, in addition to all other elements of damage. The solution is not difficult and was noted in *Hitaffer* v. *Argonne Co., supra,* 65 : "it is a simple matter to determine the damages to the wife's consortium in exactly the same way as those of the husband are measured in a similar action and subtract therefrom the value of any impairment of his duty to support."[0]

To a large degree, the objection in the cases to allowing the wife recovery for loss of consortium

---

[0] See *Cooney* v. *Moomaw,* 109 F Supp 448, 451:

"This is a matter which the court may appropriately take care of at the time of trial, if necessary, by limiting through proper evidentiary rulings and instructions to the jury the wife's recovery to such elements of damage as her loss of the husband's society and affection and the expenses to which she has been put in caring for him."

turns directly or indirectly upon the aspect of consortium just mentioned, that of material services. It is often said that the wife's cause of action for loss of consortium must include an allegation of her loss thereof, for without it, we are told, she cannot maintain her action. It is then concluded that since she cannot make this allegation (who ever heard of a servant suing her master for loss of services?) her case must fall. If she replies that the element of service is not the gist of the concept of consortium, she is told that without it nothing remains but sentiment and the law does not permit recovery for injuries to sentiment alone.

The argument thus made involves 2 fundamental errors. The first is that the concept of consortium, of conjugal fellowship, is capable of dismemberment into material services and sentimental services. Is the well-kept home or the carefully prepared meal a manifestation of affection (*i.e.,* a sentimental service) or of the skilled performance of a menial chore (*i.e.,* a material service)? Does the well-trained child know anything of sentimental services? Of material services? Of both? Are they different? Which is which? The fact of the matter is that the effort to break down consortium into its component parts is no more than a theoretician's boast, the modern counterpart to the medieval resolution of the number of angels able to dance on the head of a pin. It requires a wisdom, and an effrontery, far greater than ours to make differentiations so subtle, if, indeed, they are within the realm of human competence.

The second fundamental error in the objection made is that (assuming we can and do make the theoretical differentiation described) the law does not permit recovery for the sentimental aspect alone of consortium. We need only to glance about us to see that the law actually is otherwise. The actions

for criminal conversation and alienation of affections are in point. It is law well-established, not even worth a counter struggle, that the gist of such actions is not the loss of services but the loss of conjugal rights.[1] Such actions are, consequently, maintainable by the husband,[2] for such injury even though he was no longer living with his wife at the time the injury occurred,[3] and it is significant to note that in one of the earliest cases in this field, *Guy* v. *Livesey* (1619), Cro Jac (2 Cro) 501 (79 Eng Rep 428), the loss suffered by the husband, for which action lay, was not a loss of services at all but a loss of company. The fact of the matter is that there is no predominant element in the concept of consortium, that consortium is not capable of subdivision, and that it is not necessary that there be an allegation of the loss of any particular "element" thereof.

Finally, it is urged by some that the married women's acts, designed to remove from them their degrading and demeaning common-law disabilities, and (in some cases) to implement their constitutional guaranties,[4] not only did not aid the wife's cause

---

[1] See, *eg.*, *Lockwood* v. *Lockwood*, 67 Minn 476 (70 NW 784); Cooley, Torts (2d ed), pp 266, 267 (*227, *228). In *Guevin* v. *Manchester Street Ry.*, 78 NH 289, 292 (99 A 298, 300, LRA 1917C, 410), a negligence case, the court said:

"The action itself was *per quod consortium amisit*, not *per quod servitium*. Loss of service as the only basis of legal right was then recognized and discussed in cases for the seduction of a child or servant, but nowhere is such a statement found as to the right of a husband to recover for injuries to his wife. Undoubtedly the term *consortium* included service, but it also included society, comfort and the sexual rights. In no early case is there a suggestion that any one of these is superior to any other as a basis for legal redress."

[2] Statutes in some States, Michigan among them, bar such actions. *E.g.*, CL 1948, §§ 551.301–551.311 (Stat Ann 1957 Rev §§ 25.191–25.201).

[3] *Pierce* v. *Crisp*, 260 Ky 519 (86 SW2d 293). A husband has a cause of action against his wife's seducer, although he condones her offense. *Smith* v. *Hockenberry*, 138 Mich 129. Thus, a showing of loss of services is not required. *Hitaffer* v. *Argonne Co., Inc.*, 87 App DC 57 (183 F2d 811, 815–819, 23 ALR2d 1366).

[4] See Const 1908, art 16, § 8.

of action for loss of consortium, but eliminated the husband's as well. Since we do not here consider the husband's action, we will not pay our respects to the curious theory that we remedy the wrongful denial of a cause of action to one by denying it also to the other. This solution of the problem will appeal only to those enamored by symmetry. For the purposes of the case before us we cannot conclude that an act designed to shield women from the imposition of inequitable and sometimes degrading disabilities shall, rather, be employed as a sword to strike down her cause of action for the loss of an interest at the very heart and core of her married existence, the love, companionship, and society of her husband. It is not sufficient to say that such legislation "merely" removed procedural disabilities,[5] and it is immaterial to her action today whether her cause of action existed at the early common law or not. The point is that the underlying concept of the early common law, the inferiority of the wife, has been repudiated, and the question for decision is not whether such a right existed then but whether it exists today[6]—the difference between looking backward and looking forward. Is the face of justice, as someone put it, like the face on a coin, always to look backwards?

So far as the technical ground for decision in such cases is concerned, they involve the premise that the action for loss of consortium rests upon the loss of material services, and, since neither spouse is now entitled to the services of the other, neither may maintain the action.[7] Such historical basis, as we have seen, is highly questionable. The right to material services, whatever that may mean, is only

---

[5] *Tobiassen* v. *Polley*, 96 NJL 66 (114 A 153).

[6] See Simeone, The Wife's Action for Loss of Consortium—Progress or No?, 4 St. Louis U LJ 424, 430.

[7] See *Harker* v. *Bushouse*, 254 Mich 187, 195; *Blair* v. *Seitner Dry Goods Co.*, 184 Mich 304 (LRA 1915D, Ann Cas 1916C, 882).

an aspect of consortium, as we have seen. In fact, as Prosser puts it, "The loss of 'services' is an outworn fiction."[8] An historical basis is a poor basis for decision unless the conditions and customs of today so parallel those of the past that the reason for the rule still obtains. This is so patently not the case that discussion is unnecessary.

We are remitted, then, to a matter of sound judicial policy, a decision to be reached in the light of today's society and the current common-law solution of comparable problems. Discussion of the issue in those terms may not result in unanimity but at least it will be conducted upon a rational, understandable, basis, not in the metaphysical realm of fictions. We come, then, as we must ultimately in every case, unless we are to continue to utilize fictions, or unless we are to dispose of the case on a narrow point of procedure or pleading, to a balancing of interests. On the one hand we have a wife deprived of the affection of her husband, his companionship, his society, possibly deprived even of her opportunity to bear sons and daughters. On the other, we have a defendant, whose liability because of his act must involve the violation of a duty of care with respect to it, and, furthermore, whose liabilities as a result of his negligent act must have some reasonable limitation. So analyzed, we see the problem not as a unique and peculiar historical anomaly but as a part of a much larger pattern, as a part of a clearly discernible movement in the law. We have long since passed the time when the function of the law "was to keep the peace by regulating or preventing private war [which] only required it to deal with personal violence and with disputes over possession of property."[9] We now recognize that "the law protects interests of personality, as well as the physical

---

[8] Prosser, Torts (2d ed), § 104, at 704.
[9] Pound, An Introduction to the Philosophy of the Law, p 241.

integrity of the person." *Stewart* v. *Rudner,* 349 Mich 459, 467; Dawson & Harvey, Cases on Contracts and Contract Remedies. In fact we have seen, within our own lifetimes, the extension of the law's protection to areas once thought too obscure for recognition, to rights once thought too vague, too ephemeral, too intangible to be capable of legal measurement. Without legislative intervention, as a part, indeed, of the normal and traditional growth of the common law a right of privacy has been accorded protection,[0] as well as the right of a child to recover damages for injuries sustained prior to birth.[1] We need not elaborate. The standard treatises on torts will furnish many additional examples.

The law moves in halting steps and not equally on all fronts. It proceeds from the simpler cases, such as the intentional infringements, to those more difficult. So it has done with respect to the interest known as consortium. The husband's action, in the earliest cases, was permitted for loss of consortium due to an intentional injury.[2] This was the first stage of recovery. At a later date the action was extended to the second stage recovery for an injury negligently inflicted.[3] Generally speaking, the rights of the wife, as respects her cause of action for loss of her husband's consortium, are still in what we referred to above as "the first stage of recovery." She can today perhaps recover for loss of consortium where the defendant acted maliciously or in-

[0] *Pallas* v. *Crowley, Milner & Co.,* 322 Mich 411. See, also, *Hawley* v. *Professional Credit Bureau, Inc.,* 345 Mich 500 (dissenting opinion 508).

[1] See *Williams* v. *Marion Rapid Transit, Inc.,* 152 Ohio St 114 (87 NE2d 334, 10 ALR2d 1051), relying upon § 16, art 1 of the Ohio State Constitution (1851) providing that "all courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due process of law, and shall have justice administered without denial or delay."

[2] *Guy* v. *Livesey,* Cro Jac (2 Cro) 501 (79 Eng Rep 428).

[3] See cases cited in *Hoekstra* v. *Helgeland,* 78 SD — (98 NW2d 669).

tentionally, but she still may not recover where the injury was merely negligently inflicted.[4]  Possibly it will take the majority of our courts, also, as it did the English courts, scores of decades to move into the second stage of recovery, though it is to be hoped that justice will not be so long deferred.

Relief is extended the wife in the intentional cases, *supra,* for one basic reason, the interest of society in the protection of the family as the social unit upon which, at least in this country, society rests. Our concern is not with the family of the middle ages, with its tyrannies and abuses, but with the family of today.  If this is the interest to be protected, and we conclude that it is, the law's protection should extend as well to the negligent as to the intentional injury.  In each case the loss is equally severe and the importance to our society of the welfare of the family unit outweighs the importance of the defendant's claims to immunity.

The gist of the matter is that in today's society the wife's position is analogous to that of a partner, neither kitchen slattern nor upstairs maid.  Her duties and responsibilities in respect of the family unit complement those of the husband, extending only to another sphere.  In the good times she lights the hearth with her own inimitable glow.  But when tragedy strikes it is a part of her unique glory that, forsaking the shelter, the comfort, the warmth of the home, she puts her arm and shoulder to the plow. We are now at the heart of the issue.  In such circumstances, when her husband's love is denied her, his strength sapped, and his protection destroyed, in short, when she has been forced by the defendant to exchange a heart for a husk, we are urged to rule that she has suffered no loss compensable at the law. But let some scoundrel dent a dishpan in the family

---

[4] See *Sheard* v. *Oregon Electric Ry.,* 137 Ore 341 (2 P2d 916).

kitchen and the law, in all its majesty, will convene the court, will march with measured tread to the halls of justice, and will there suffer a jury of her peers to assess the damages. Why are we asked, then, in the case before us, to look the other way? Is this what is meant when it is said that justice is blind?

No, we see the suffering. But it is urged that the precedents tie us. A wife, said the ancient precedents, could not sue because she was a legal non-entity. And, even if she could, she had no cause of action to assert because a servant has no "right" to the services of her master. But none of this is true today, either as a matter of fact or as a matter of law. The married women's acts[5] and common constitutional provisions have wrought a revolutionary change. Legally, today the wife stands on a par with her husband. Factually, as we well know, her position is no less than that of an equal partner. The precedents of the older cases are not valid precedents. They are violative of women's statutory rights and constitutional safeguards. They are out of harmony with the conditions of modern society. They do violence to our convictions and our principles. We reject their applicability. The reasons for the old rule no longer obtaining, the rule falls with it. The obstacles to the wife's action were judge-invented and they are herewith judge-destroyed. We conclude that the wife before us has pleaded a cause of action.

So far as *Blair* v. *Seitner Dry Goods Co.,* 184 Mich 304 (LRA 1915D, 524, Ann Cas 1916C, 882), and *Harker* v. *Bushouse,* 254 Mich 187, may be interpreted as authority otherwise, they are overruled.

---

[5] *E.g.,* CL 1948, §§ 612.5–612.7 (Stat Ann §§ 27.657–27.659).

Reversed and remanded for further proceedings not inconsistent herewith. Costs to appellant.

BLACK, EDWARDS, and KAVANAGH, JJ., concurred with SMITH, J.

CARR, J. (*dissenting*). This is an action by a married woman seeking to recover damages for loss of consortium resulting from injuries sustained by her husband in an automobile accident. The declaration filed set forth that in the afternoon of February 8, 1958, said husband, Robert Montgomery, was driving an automobile in an easterly direction on Bock street in the city of Garden City, that at the same time the defendant Stephan was operating a motor vehicle in a southerly direction on Helen street in said city, and that at the intersection of the 2 streets the vehicles came in contact as a result of which plaintiff's husband sustained very serious physical injuries. The pleading further alleged that defendant's negligence was the sole and proximate cause of the accident, and that by reason thereof plaintiff had:

"(a) Suffered a loss of consortium and invasion of consortium;

"(b) Was deprived of her husband's aid, assistance, enjoyment, sexual relations, love, conjugal affection, companionship, felicity, society, advice, counsel, comfort, co-operation, and mutual service;

"(c) Has been required to render extraordinary, unusual and very difficult services to her husband, and she will be required to do so in the future."

Defendant filed answer to the declaration denying liability on his part and further stating therein that he would subsequently move to dismiss the declaration. Such motion was filed, alleging as the basis therefor that "neither husband nor wife may recover for the loss of consortium in this State." The circuit

judge hearing the matter granted the motion on
the theory that the present law in the State of
Michigan does not permit the recovery of damages
on the basis asserted in plaintiff's declaration. It
was further pointed out by the judge in the opinion
filed by him that plaintiff's husband had also insti-
tuted suit for damages against defendant in the
circuit court for Wayne county, based on the acci-
dent in question, which case was then pending. No
question is raised as to the situation in this respect.

Plaintiff has appealed from the order of dismis-
sal. No claim is made that the circuit judge was in
error in his conclusion as to the present law of this
State, but this Court is urged to declare that the rule
heretofore uniformly observed should no longer be
followed and that an action for damages for loss or
impairment of consortium may be maintained by
either spouse. It is conceded that the weight of au-
thority in the country is opposed to the course that
counsel for appellant would have this Court pursue
by judicial action. It is also conceded that under
the common law of England a married woman could
not maintain an action of this character. It is in
substance argued that under certain alleged "modern
trends" the right to recover damages based on
grounds here asserted should be allowed, and that
such result should be brought about by judicial ac-
tion rather than by the enactment of enabling stat-
utes by the legislature of the State. With such view
we are unable to agree.

In the case of *Blair* v. *Seitner Dry Goods Co.*, 184
Mich 304, 314 (LRA 1915D, 524, Ann Cas 1916C, 882),
it was declared that:

"For loss of consortium, of the undefined and in-
definable influence of either spouse in the family re-
lation, and the pleasure of the relationship, neither
may recover."

The Court quoted with approval from *Feneff* v. *New York Central & H. R. R. Co.*, 203 Mass 278, 280 (89 NE 436, 437, 24 LRA NS 1024, 133 Am St Rep 291), as follows:

"No case has been brought to our attention, and after an extended examination we have found none, in which an action for a loss of consortium alone has been maintained merely because of an injury to the person of the other spouse, for which the other has recovered, or is entitled to recover, full compensation in his own name, when the only effect upon the plaintiff's right of consortium is that, through the physical or mental disability of the other, the companionship is less satisfactory and valuable than before the injury."

The Court also commented on the prior decision in *Gregory* v. *Oakland Motor Car Co.*, 181 Mich 101, to which attention has been directed by counsel in the instant case. The scope and effect of such prior decision must be considered in the light of the subsequent comments. The holding in the *Blair Case* was followed in *Harker* v. *Bushouse*, 254 Mich 187, where it was stated that neither husband nor wife may recover in this State for the loss of consortium. See, also, *Bugbee* v. *Fowle*, 277 Mich 485.

It will be noted that this State has not recognized the right of either spouse to maintain an action for damages for loss of consortium. In some jurisdictions such right has been recognized as possessed by the husband but it has been denied to the wife for various reasons sounding in part in her common-law disabilities, and in the failure of affirmative legislative action granting to her a right to pursue such remedy. In certain comparatively recent decisions such differentiation has been criticized as discriminatory. So far as Michigan is concerned there is no discrimination, based on sex, in denying recovery for loss of consortium. The established

rule is applicable to the husband as well as to the wife.

In *Hitaffer* v. *Argonne Co., Inc.,* 87 App DC 57 (183 F2d 811, 23 ALR2d 1366), cited and relied on by appellant, the court of appeals of the District of Columbia recognized the unanimity of authority denying to the wife the right of recovery for damages for loss of consortium, but declined to follow it for reasons set forth at some length in the opinion. It was, however, recognized that in situations where the husband brings action and recovers damages and the wife also sues and recovers for loss of consortium there may be a double recovery with respect to the so-called "service element" of consortium. It is interesting to note that in the *Hitaffer Case* the husband had received compensation for his injuries under the applicable workmen's compensation statute.

The court in its opinion rejected claims recognized by courts of last resort in many States to the effect that in negligence cases damages are payable to the injured person for the direct consequences of the wrong, that the injury to the wife is indirect, remote, and incapable of measurement, that the common law recognized no right of action based on the so-called sentimental elements of consortium, that while the wife is entitled to be supported by the husband his recovery of damages for impairment of earning ability includes her losses in this respect, and that she may not maintain an action on the ground of loss of services. The *Hitaffer Case* is reported in 23 ALR2d 1366, where it is followed by a somewhat extensive annotation, 23 ALR2d 1378, indicating the legal situation throughout the country. It was followed, and the opinion on the question at issue quoted in full, in *Brown* v. *Georgia-Tennessee Coaches, Inc.,* 88 Ga App 519 (77 SE2d 24). It was expressly held, however, by the Georgia court that the right to recover for the husband's

loss of earnings and earning capacity belonged primarily to him. It was further pointed out that no appellate court in the State of Georgia had previously *denied* the right to recover damages for loss of consortium.

In a 4-to-3 decision the supreme court of Arkansas in *Missouri Pacific Transportation Co.* v. *Miller,* 227 Ark 351 (299 SW2d 41), upheld the right of a wife to recover damages for loss of consortium, the husband having also recovered damages for his injuries. Three members of the court dissented as to the right of the wife to maintain the action. It was pointed out in the dissents that no law of the State authorized such an action, and that if it should be recognized the remedy lay with the legislature and not with the court. Justice McFaddin in his opinion summarized the situation as follows (p 368):

· "I cannot agree to Mrs. Miller's recovering for loss of consortium. We have no statute in Arkansas allowing for such a recovery. The majority concedes that it is proceeding under the judge-made law in the case of *Hitaffer* v. *Argonne Co., Inc.,* 87 App DC 57 (183 F2d 811, 23 ALR2d 1366). Until the legislature of Arkansas passes a statute allowing for consortium, then I cannot agree to the consortium portion of the majority opinion. Judge Holt has gone into the matter in detail in his dissent, and I concur in his conclusions."

The supreme court of Iowa, 4 justices dissenting, also followed the reasoning of the *Hitaffer Case* in *Acuff* v. *Schmit,* 248 Iowa 272 (78 NW2d 480). In the majority opinion the view was apparently taken that the husband could maintain such an action and that the argument that there should be no discrimination as between the sexes was persuasive. In that case the husband started suit for damages, the action being dismissed apparently on the making of a settlement. The opinion of the majority recognized that the weight of authority was against the position

of the 5 justices concurring therein. It was pointed out (p 284) on behalf of the 4 dissenting justices that while there were decisions in a limited number of jurisdictions supporting the view of the majority of the court, there were more than 50 cases throughout the country holding to the contrary. The dissenting opinion emphasized the distinction between cases involving an intentional invasion of conjugal rights, such as actions for damages for alienation of affections, criminal conversation, and illegal sale of liquors or drugs, and negligence cases. It was further stated that numerous cases involving the question, decided after the holding in the *Hitaffer Case* in 1950, had declined to follow the holding and line of reasoning in said case.

In *Nickel* v. *Hardware Mutual Casualty Company,* 269 Wis 647 (70 NW2d 205), decided in May, 1955, the supreme court of Wisconsin refused to follow the decision in the *Hitaffer Case,* commenting that prior to that decision only one jurisdiction (North Carolina) had reached the same conclusion, and that in a later decision (*Hinnant* v. *Tidewater Power Co.,* 189 NC 120 [126 SE 307, 37 ALR 889]), the prior case had been overruled. It was pointed out that the court of appeals of the 7th circuit in *Seymour* v. *Union News Co.,* 217 F2d 168, and the court of appeals of the 9th circuit in *Filice* v. *United States,* 217 F2d 515, had followed the majority rule rather than the holding of the court of appeals of the District of Columbia. The Wisconsin court further discussed statutes relating to the rights of married women, citing *Howard* v. *Verdigris Valley Electric Co-Operative,* 201 Okla 504 (207 P2d 784). Comment was made on the fact that the Oklahoma statute was broad in its provisions insofar as the rights of married women were concerned, but in denying the right of plaintiff wife to recover damages based on

loss of consortium the supreme court of that State had said in its opinion (p 508):

"It is generally held that a wife can recover damages arising out of an intentional wrong done to the husband, or from a direct attack upon the marriage relationship. But, there is no authority for plaintiff's argument that a wife can recover damages arising out of injuries to her husband occasioned by a third party's negligence. The multitude of decisions wherein this question has been considered precludes citation and discussion. The underlying principle to be noted in all the cases is that whatever additional rights may have been extended to women generally under the so-called emancipation statutes, or married women's acts, such statutes do not confer a new right upon the wife which permits recovery for loss allegedly resulting from negligent injuries to her husband, since no new cause of action was created thereby."

Summarizing its position, the Wisconsin court used the following significant language (pp 652, 653):

"Various reasons have been given by the courts for their rejection of claims of this nature. To us the most appealing is that to permit it would result in double recovery to the husband and wife for the same injury. In the husband's action he is entitled to recover full compensation for all injuries he sustained, including that for being incapacitated, for his inability to care for, protect, and associate with his wife. If she were authorized to recover from the same wrongdoer, the damages she has sustained for the same injuries which her husband may recover for and out of which recovery he is presumed to support and care for her, their recovery would be double, which in our opinion the legislature never intended. The settlement of a husband's claim for personal injuries resulting from the negligent act of another has always been recognized in this State as closing the incident. The right to main-

tain an action of this kind is at least so doubtful that the court should not confer it. Matters of policy are involved. Such matters should be submitted to the legislature whose function and exclusive province it is to consider them."

As before noted, the court in its decision in the *Hitaffer Case* upheld the right of the plaintiff to recover damages for loss of consortium although the husband had received compensation under pertinent provisions of the workmen's compensation statute for the District of Columbia. In *Hartman* v. *Cold Spring Granite Company,* 247 Minn 515 (77 NW2d 651), a like situation was presented. The husband had been awarded workmen's compensation benefits under the Minnesota statute, and thereafter the plaintiff wife instituted suit for damages for loss of consortium. On motion in the trial court summary judgment was entered for the defendant. The supreme court affirmed the judgment. In doing so the court called attention (p 517) to a provision of the workmen's compensation act of the State which declared that liability thereunder should be exclusive and in lieu of "other liability to such employee, his personal representative, surviving spouse, parents, child or children, dependents or next of kin, or any other person entitled to recover damages at common law or otherwise on account of such injury or death." It was held that, in view of the express provisions of the statute, the court was without power to adopt a rule contrary thereto, and that any change in the statute must come about through action by the legislature rather than by the courts.

Among other decisions involving the question is *Lockwood* v. *Wilson H. Lee Company,* 144 Conn 155 (128 A2d 330), decided in 1956. Plaintiff brought her action alleging permanent partial, or total, incapacity on the part of her husband resulting from the negligence of the principal defendant and its

agent, and that as a result she had been deprived of "the affection, care, assistance, services, support and conjugal relations to which she is entitled by virtue of the marital relationship." Under the practice observed defendants demurred to plaintiff's complaint on the ground that in Connecticut one spouse cannot maintain an action for damages, based on negligence, for loss of consortium. The trial court sustained the demurrers and the supreme court of the State affirmed. In the opinion a distinction was drawn between cases involving alienations of affections or criminal conversation and those resting on claims of negligence. As to the latter type of cases, it was said (p 157):

"The right to recover damages for disability resulting from personal injuries is personal, and it is the exclusive right of the injured spouse." (Citing cases.)

The court expressly declined to adopt the rule stated in *Hitaffer* v. *Argonne Co., Inc., supra.*

Counsel for appellant in his brief has cited *Deshotel* v. *Atchison, Topeka & S. F. R. Co.,* — Cal App — (319 P2d 357), decided in 1957. In that case the plaintiff, a married woman, brought action against defendants to recover damages for loss of consortium claimed to have resulted from their negligent acts. The trial court sustained a demurrer. The district court of appeals of the 1st district upheld the right of the plaintiff to maintain the action, apparently on the theory that the husband might sue for damages under similar circumstances, and that equal rights should be granted to the wife. The case came before the supreme court, sitting *in banc, Deshotel* v. *Atchison, Topeka & S. F. R. Co.,* 50 Cal 2d 664 (328 P2d 449), and the prior holding of the district court of appeals reported in 319 P2d 357 was vacated. It was the holding of the supreme

court, in accordance with numerous other decisions, that the great weight of authority denied the right to maintain the action. In discussing reasons for such holding, it was said, in part (pp 667–669):

"It is clear that the granting of relief to the wife for loss of consortium caused by negligent injury to her husband would constitute an extension of common-law liability, and the courts are justifiably reluctant to depart from established limitations on recovery. Obviously, such an extension would also involve problems of policy or procedure. A judgment obtained by a husband after he is injured by a third person might include compensation for any impairment of his ability to participate in a normal married life, and, if his wife is allowed redress for loss of consortium in a separate action, there would be danger of double recovery. Any harm she sustains occurs only indirectly as a consequence of the defendant's wrong to the husband, and the measurement of damage for the loss of such things as companionship and society would involve conjecture since their value would be hard to fix in terms of money. Moreover, if a cause of action in the wife were recognized on the basis of the intimate relationship existing between her and her husband, other persons having a close relationship to the one injured, such as a child or parent, would likely seek to enforce similar claims, and the courts would be faced with the perplexing task of determining where to draw the line with respect to which claims should be upheld. Another difficulty is that judicial, as distinguished from statutory, recognition of the wife's cause of action would operate retroactively and might work hardship upon persons who, in reliance upon the common-law rule, have made settlement with the husband, believing that the wife could not sue.

"In our view the legislature rather than the courts can best deal with these problems. For example, the legislature, if it found this type of suit to be

desirable, could define the extent of the liability, designate who may maintain the action, and provide safeguards against the danger of double recovery, such as a requirement that there be a joinder of the person directly injured and the one consequentially harmed. The legislature could also specify whether the proceeds should belong to the plaintiff alone or to both spouses. (*Cf.* Civ Code, § 163.5, declaring that damages awarded a married person for personal injuries are the separate property of such person.) Some of the objections noted above with respect to an action by the wife apply with equal force to one brought by the husband, but a husband's claim is not before us, and we need not determine whether such a claim should be allowed. Clarification by statute as to both the husband and the wife would, of course, be preferable to piecemeal determination of the problems by judicial decision. * * *

"The legislature has not seen fit to alter the common-law rule that the wife cannot recover for the loss of consortium resulting from a negligent injury to her husband, and we are of the opinion that any departure from the overwhelming weight of authority in support of that rule should be left to legislative action."

In recognition of the general rule on the subject it is said in 3 Restatement of the Law, Torts, § 695:

"A married woman is not entitled to recover from one who, by his tortious conduct against her husband has become liable to him for illness or other bodily harm, for harm thereby caused to any of her marital interests or for any expense incurred in providing medical treatment for her husband.

"Comment:

"*a.* Although a husband is entitled to recover for the loss of his wife's services and society and any expense which he incurs as a result of illness or bodily harm caused to her by the tortious conduct of another, a wife is not entitled to a recovery under similar circumstances. The wife is not, nor has she

ever been, entitled to the services of her husband. Moreover, she is not deprived of the support to which she is entitled by any tort committed against him. The husband is still legally bound to provide support for her, and the tort-feasor is liable to the husband for any loss of earning power which he may suffer. This the husband himself may recover, and were his wife permitted to recover for the loss of support, a double recovery would result. The wife has a similar interest in the society and sexual relations with her husband as he has in such relations with her. However, the law has not recognized her right to recover against one who has caused harm to such interests by conduct which is not intended to harm them. One who has negligently injured the husband, or has intentionally caused him harm, by conduct directed toward him personally rather than toward the wife's interest, is not liable to the wife.

"*b. Medical expenses.* Merely because she is a wife, a married woman is not entitled to recover for expenses incurred by her for medical treatment of her husband from one who has tortiously caused him bodily harm."

By way of summarization, we quote the following from 27 Am Jur, Husband and Wife, § 514, pp 114, 115:

"Whatever right a wife may have, by virtue of statutes removing her common-law disabilities to recover for loss of consortium of her husband as a result of injuries inflicted by a third person, does not extend to loss of consortium caused by a mere negligent injury inflicted upon the husband. At least, in the absence of any statute expressly conferring it, a wife, even though able to sue and be sued as a *feme sole,* has no right or cause of action, as a general rule, for loss of consortium due to injuries negligently inflicted on her husband. She has no such cause of action even under a statute preserving to her all rights of action growing out of violation of her per-

sonal rights. Her loss of consortium resulting from negligence is too remote and indirect to permit her to recover therefor, and hence, it is distinguishable from loss of consortium resulting directly from a wrongful act, as where her husband is wrongfully enticed, seduced, or forced away from her. Furthermore, damages to which the husband is entitled, in a suit for his injuries sustained through another' negligence, are supposed to be full compensation for his injuries, in which compensation his wife has a benefit, with the consequence that if the wife is permitted a separate recovery for her loss of consortium resulting from such injuries, there is, in effect, a double recovery for the same matter.

"Where the view is taken that under the married women's acts, the husband has no cause of action for loss of consortium resulting from wrongful or negligent injury of his wife, any such cause of action in a wife is, of course, denied. Such right of action in the wife has been denied, however, even where, under such acts, it has been recognized in the husband, or where it does not appear that such right of action in the husband has been passed on or denied."

Any change in the established rule of law in this State with reference to the question here at issue should come, if at all, by action of the legislature rather than by judicial fiat. We are impressed that the comments of the chief justice of the California supreme court, above quoted, are basically sound. They are in accord with the views expressed in opinions of other courts and by text writers. If damages are to be allowed for loss of consortium the establishment of such cause of action is properly for legislative determination. Obviously in the making of any such change the term "consortium" must be specifically defined, and the incidents thereof for which damages may be allowed should be set forth. Likewise, there should be a prescribed method for computing damages. Allowing the recovery of damages on each

item in the discretion of a jury would result in confusion and in verdicts based on sympathy and speculation. Such results may be obviated, at least to a large extent, by considered legislative action.

The creating of causes of action, and, likewise, the abolishing thereof, involve questions of policy which the legislature should determine. It may be noted in this connection that under the so-called death act of the State (CL 1948, § 691.581 *et seq.* [Stat Ann 1957 Cum Supp § 27.711 *et seq.*]), the damages that may be recovered for negligently or otherwise causing death are specified. They are limited to damages for pain and suffering by decedent, damages for medical, funeral, and hospital expenses, and such other damages as the trier of the facts may deem fair and just with reference to the *pecuniary* injury resulting from the death to those persons who may be entitled to such damages when recovered. Obviously, there is no room for damages based on loss of, or injury to, consortium. In the instant case if the death of plaintiff's husband had resulted from defendant's negligence, the type of action that she has brought would not lie.

It may also be noted that the legislature of the State by PA 1935, No 127 (CL 1948, § 551.301 *et seq.* [Stat Ann 1957 Rev § 25.191 *et seq.*]), abolished all civil causes of action for criminal conversation, seduction, and also for alienation of affections unless the defendant is a designated close relative of the plaintiff's spouse. In other words, actions for direct invasion by affirmative means of rights of consortium, formerly recognized, do not now exist under the statute cited. The thought naturally suggests itself that for this Court to decree that such an action may be brought, based on negligent conduct resulting in impairment of rights of consortium, would be inconsistent with the legislative action. The obvious fact is that questions of public policy are involved,

and in accordance with basic principles of government the determination thereof should be left to legislative action.

Involved also in a consideration of the problem from its various angles is the workmen's compensation law of the State.* Assuming that the situation arises, as it has in cases in other States, where the negligence of an employer has resulted in injury to an employee and compensation has been awarded and paid in accordance with the statute, may the other spouse be permitted to maintain an action for damages for loss of consortium? In some instances, as under the statute involved in the Minnesota case above cited, specific provisions may be construed as barring such cause of action. May it be said that the Michigan statute has like effect? If not, we would have clearly involved in a plaintiff's right to recover, if sustained in this case, a matter for legislative regulation and adjustment of legal rights.

Without discussing the situation in further detail, we think that the problem is one calling for the exercise of legislative determination. The overwhelming weight of authority at the present time is concededly opposed to allowing the instant action to be maintained. This Court should not undertake to change the settled rule of law in this State.

The judgment of the trial court should be affirmed, with costs to defendant.

DETHMERS, C. J., and KELLY, J., concurred with CARR, J.

SOURIS, J., took no part in the decision of this case.

* CL 1948, § 411.1 *et seq.*, as amended (Stat Ann 1950 Rev and Stat Ann 1957 Cum Supp § 17.141 *et seq.*).